J. M. LOPEZ, Jr., et al., Plaintiffs,

v.

JACKSON COUNTY BOARD OF SUPERVISORS et al., Defendants.

Civ. A. No. S74-43(R).

United States District Court,
S. D. Mississippi, S. D.
May 13, 1974.

---

**1196**

Arnaud O. Lopez, Biloxi, Miss., for plaintiffs.

Raymond L. Brown, Pascagoula, Miss., Ronald G. Peresich, Biloxi, Miss., and Oscar R. Jordan, Ocean Springs, Miss., for defendants.

## OPINION OF THE COURT

DAN M. RUSSELL, Jr., Chief Judge.

Three individual plaintiffs, J. M. Lopez, Jr., and D. O. Simmons, residents of Biloxi, Harrison County, Mississippi, and Wales H. Newby, a resident of Bogalusa, Louisiana, on behalf of themselves and others similarly situated, brought this action against the Board of Supervisors, Jackson County, Mississippi, and the five individual members of that board; the City of Ocean Springs, Mississippi, its mayor and board of aldermen; and the Ocean Springs Harbor Committee, and its nine individual members, seeking a temporary restraining order, a preliminary and permanent injunction and money damages. Jurisdiction is based on 28 U.S.C. § 1343(3). Plaintiffs claim that defendants have deprived plaintiffs of constitutional rights guaranteed by 42 U.S.C. §§ 1981 and 1983, and under Article 1, Section 10 of the United States Constitution in that defendants have recently notified plaintiffs, who are non-residents of Jackson County, to vacate boat slips in the Ocean Springs Inner Harbor in favor of residents of Jackson County.

After a hearing with all parties present, this Court granted a temporary restraining order as requested, directing the defendants to permit all non-residents of Jackson County presently renting boat slips in said harbor to retain their boats in their respective slips. Defendants agreed for the restraining order to stay in effect until a ruling on the merits. The Court directed that the hearing for preliminary and permanent injunction be consolidated and a subsequent hearing was had on the merits.

The individual plaintiffs offered testimony that each had for many years rented a boat slip in the Ocean Springs Inner Harbor. Each testified that on or about December 19, 1973, at a time when their rentals were paid up to date, each received a letter from the Ocean Springs Harbor Committee, signed by its secretary, that the Board of Supervisors and the Committee "who have jurisdiction of the operation and maintenance of the Ocean Springs Inner Harbor" had adopted a regulation giving priority to residents of Jackson County to keep their boats in the Inner Harbor and rent docking space. The letter gave notice that the "County" will require plaintiffs' stalls and that plaintiffs should move their boats to another location on or before March 31, 1974. The letter was accompanied by a set of numbered rules effective January 1, 1974, the third rule providing that "Nonresidents of Jackson County will be required to vacate the harbor slips no later than March 31, 1974."

Essentially plaintiffs claim that the defendants have no right to evict them from a public harbor on a geographical, segregated basis. They further claim, by reason of their rentals over a long period of years, they have acquired vested rights in and to the boat slips rented by them; and that the Board of Supervisors' minutes reflect that the board has retroactively attempted to legalize the appointment of the members to the Harbor Committee and approve the Committee's actions in sending out the notices to vacate and in the Committee's adoption of the rules accompanying the notices.

■ The Court, at the conclusion of the trial, dismissed the action as to the City of Ocean Springs and its named officials for the reason that no evidence linked these defendants to plaintiffs' claims. The Court reserved ruling on the propriety of plaintiffs' class and now finds that the class claimed by plaintiffs is not appropriate under F.R. Civ.P., Rule 23, in that its alleged members are not so numerous that the joinder of all members was impracticable. The evidence showed that there were only sixteen non-resident boat owners renting slips prior to the notice to va-

cate, all readily identifiable, nine of whom had moved their boats at the time of the trial. The three named plaintiffs are among the seven remaining.

 The Court also finds that plaintiffs have failed to state a cause of action under 42 U.S.C. § 1981 and under Article I, Section 10 of the Constitution. This action in no way involves a racial issue, and, accordingly, § 1981 is inapplicable. Nor is Article I, Section 10, prohibiting the Congress from passing ex post facto laws applicable. Annotated U.S.C. citations under this section all agree that this prohibition is aimed at criminal or penal laws.

The Court does find that plaintiffs have alleged a cause of action under 42 U.S.C. § 1983. This action is applicable to persons who, under color of law, have deprived citizens of the United States of any rights secured by federal law, including the right to due process and equal protection of the law under the 14th Amendment. See Mansell v. Saunders, 5 Cir., 372 F.2d 573. Defendants concede that the actions of the Board of Supervisors and the Committee are under color of law. Plaintiffs' allegations, although not as specific as they might have been, together with plaintiffs' evidence, do raise questions of due process and equal protection.

Plaintiffs charged and offered evidence to show that the title to the Ocean Springs Inner Harbor is nebulous to say the least. It is undisputed that the harbor is within the municipal limits of Ocean Springs. Plaintiffs offered as an exhibit minutes of the board of October 6, 1953, in which the board acted favorably on a request of the City of Ocean Springs for the board to take over the operation of and maintenance of the harbor "which is operated and maintained by the City of Ocean Springs; . . . . .". The minutes reflect that the board found it was authorized to accept the City's request by virtue of Sections 7606–7611 of the Mississippi Code of 1942. In another excerpt of the minutes dated two years later, October 13, 1955, the board adopted a resolution authorizing it to expend the sum of $31,500.00 "to aid and assist the City of Ocean Springs in Jackson County, Mississippi, in the construction and maintenance of a small craft harbor, channel or basin within the City of Ocean Springs . . . . .". The same minutes also contained an order authorizing the board to purchase two separate parcels of land from private owners as rights of way for a road at the harbor. As late as April 17, 1973, other minutes, offered in evidence, authorized the board to quitclaim to the Ocean Springs Yacht Club certain property south of the Inner Harbor in Ocean Springs. In these minutes the board acknowledged that record ownership was vested in a private owner, but that there had been long standing public use of said property particularly in connection with docking and pier facilities erected by the board on the south side of the Inner Harbor and rights appurtenant to the harbor. The board in its conveyance reserved a twelve foot easement running from the north boundary of Harbor Road to the docking facilities and pier situated on the south side of the Inner Harbor. At the initial hearing on the temporary restraining order, plaintiffs were unable to offer any minutes of the board authorizing the Ocean Springs Harbor Committee to oust non-resident boat owners of their rented slips in the harbor. At the hearing on the merits plaintiffs offered as exhibits two resolutions of the board, both adopted on March 26, 1974, twelve days after this suit was filed. They read as follows:

"NUNC PRO TUNC

RESOLUTION OF THE BOARD OF SUPERVISORS RATIFYING AND CONFIRMING APPOINTMENTS TO OCEAN SPRINGS HARBOR COMMITTEE

WHEREAS, Ocean Springs Harbor Committee was appointed and has been acting since October, 1973; however, the Clerk of this Board was never delivered the list of the appointments to place on the Minutes, and the

membership thereof should be ratified and confirmed.

NOW, THEREFORE, BE IT RESOLVED by the Board of Supervisors of Jackson County, Mississippi that the appointment of the following persons as members of the Ocean Springs Harbor Committee, be, and the same is, hereby ratified and confirmed, to-wit:

Duncan Moran

Leonard Gavins

Willie Dale

Dr. Richard Furr

Edward C. Reynolds

Fred Brooks

A. J. Holloway, Sr.

BE IT FURTHER RESOLVED that said Harbor Committee shall have jurisdiction over the Ocean Springs Inner Harbor and shall manage and run said Harbor and recommend rules and regulations to this Board, and enforce such rules and regulations.

The adoption of the above Resolution was moved, seconded and unanimously adopted by the Board of Supervisors of Jackson County, Mississippi on this the 26th day of March, A.D., 1974.

## NUNC PRO TUNC

## RESOLUTION OF THE BOARD OF SUPERVISORS OF JACKSON COUNTY, MISSISSIPPI RATIFYING AND APPROVING ACTION OF OCEAN SPRINGS HARBOR COMMITTEE

WHEREAS, in November, 1973, the Ocean Springs Harbor Committee presented to the Board of Supervisors certain rules and regulations concerning the Ocean Springs Inner Harbor, which were approved by the Board at that time; however, said rules were never delivered to the Clerk to place on the Minutes; and

WHEREAS, the Ocean Springs Harbor Committee has adopted and distributed such rules that were effective January 1, 1974 and had notified all non-resident owners by letter dated December 19, 1973 of such rules, which rules and letter are as follows:

THE FOLLOWING RULES WILL APPLY TO ALL SHIP HOLDERS EFFECTIVE JANUARY 1, 1974—

1. All slip fees will be $7.50 per month except skiff slips which will be $1.50 per month.

2. Slip renters will be given six (6) months to replace sold boats or be required to relinquish the slip. The Harbor Master will then assign the slip to the #1 priority applicant.

3. Non-residents of Jackson County will be required to vacate the harbor slips no later than March 31, 1974.

4. Slip renters are required to keep the areas of their slips clean. Trash will not be piled on piers or on roadsides. There are trash cans available and they will be used.

5. The Harbor Master (Malcolm Beaugez) will be notified if trash removal or harbor maintenance is needed (Phone 875–5606)

6. Users of the harbor will observe the 'No Wake' signs.

7. No live bait trawling will be allowed in harbor.

8. The Harbor Master (Malcolm Beaugez) has the authority to enforce harbor rules.

----

Ocean Springs, Mississippi 39564
December 19, 1973

Mr. W. H. Newby
830 Lake Avenue
Bogalusa, Louisiana 70427

Dear Mr. Newby:

The Board of Supervisors of Jackson County, Mississippi and the Ocean Springs Inner Harbor Committee, who have jurisdiction of the operation and maintenance of the Ocean Springs Inner Harbor, have adopted a regulation

giving priority to residents of Jackson County, Mississippi to keep their boats in the Inner Harbor and rent docking space.

You are hereby given notice that the County will require your stall for other parties to place their boat and your boat should be moved from the Ocean Springs Inner Harbor to another location on or before the 31 day of Mar., 1974. The County is giving you a reasonable time in order that you might find another suitable location. We are sorry to have to give this notice, but because of the growth and increased boat usage in the County, the citizens have been demanding docking space for their boats. We appreciate your business you have given to the County in the past.

> Very truly yours,
> OCEAN SPRINGS
> HARBOR COMMITTEE
> BY: R. T. Furr Sec'y."

It is axiomatic that boards of supervisors speak through their minutes. See Butler v. State, 241 So.2d 832 in which the Mississippi Supreme Court said:

> "Nothing said in this opinion should be considered as modifying in any manner, or as lessening in any degree, the force of pronouncements of this court to the effect that, in order to be valid, official acts of boards of supervisors must be evidenced by orders or resolutions entered upon their minutes and duly signed as required by law."

This Court has searched diligently for Mississippi cases ruling on the effect of nunc pro tunc orders of boards of supervisors. Although it has found none on facts similar to these, it has found two cases which indicate that the Mississippi Supreme Court would find that these two nunc pro tunc orders of the Jackson County Board of Supervisors can not breathe life into the actions of the Inner Harbor Committee at a time when they had none. In Martin v. Newell, 198 Miss. 809, 23 So.2d 796, the court held that a county board of supervisors cannot enter an order setting out a contract to convey realty nunc pro tunc as of a former term and thereby give it the effect it would have had had it been entered at such former term. In an earlier case, Board of Supervisors of Lafayette County v. Parks, 132 Miss. 752, 96 So. 466, the court ruled that the board could not enter an order as of a former term and give it the effect as if so entered.

Plaintiffs were entitled to know by what authority they were being asked to give up their rented boat slips and the reason therefor which could only be evidenced by minutes timely made and signed. In the absence of valid orders of the board timely reflected in the minutes of the board, the actions of the Committee were and are invalid and deprived plaintiffs of due process of law.

Defendants claim that they were wholly within their authority to discriminate between residents of Jackson County and non-residents and that their purpose in giving priority to residents is a valid one. There are approximately 151 boat slips of various sizes in the harbor, and there is a waiting list of over 70 Jackson County residents who have applied for space. Defendants assert that the equal protection of laws requires only that persons similarly situated be treated equally, and cite, for example, that residents would constitute one classification and non-residents another. It is true that the 14th Amendment permits states a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The Supreme Court of the United States has held that the constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. See McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393. Defendants, in further support of their po-

sition cite Village of Larchmont v. Gilbert, Co.Ct., 137 N.Y.S.2d 389, wherein an ordinance establishing parking lots solely for residents, thereby excluding non-residents, was held valid, and Salsburg v. Maryland, 346 U.S. 545, 551, 74 S.Ct. 280, 98 L.Ed. 281, wherein the Supreme Court held that the Equal Protection Clause relates to equality between persons as such rather than between areas. And, of course, there are cases in which counties are treated separately by the state legislature.

Plaintiffs offered evidence by way of other exhibits consisting of canceled checks of one of the plaintiffs showing that from 1962 up through 1967 he had paid rentals in advance, his checks being payable to "Small Craft Harbor." On the endorsement side, these checks were shown as deposited to "Seawall Maintenance Fund." A revenue ledger taken from records of the Board of Supervisors shows rental income from the small craft harbor, over a period from October 1973 to February 26, 1974, credited to "Rivers & Harbors Maintenance & Dev. Fund." A one page "Docket of Claims", dated January 7, 1974 show various claims and amounts charged to the Rivers & Harbors Maintenance and Development Fund. It may be inferred from these exhibits, particularly the first one, that the Inner Harbor has been maintained from county-levied taxes in addition to boat rentals. The Court takes judicial knowledge that moneys for the Seawall Maintenance Fund have been historically taxed to gasoline sales. The sales in Jackson County have been to the traveling public, non-residents as well as residents.

As to plaintiffs' contention that they acquired a vested interest in their use of the boat slips, the Court disagrees. Defendants' evidence was conclusive that boat rentals were by the month despite the fact that plaintiffs occasionally paid in advance.

Defendants' urging that the actions of the board and of the Inner Harbor Committee in setting up a priority system favoring residents of Jackson County does not deny equal protection to non-residents is not persuasive. Their actions have the effect of an ouster, and in view of the fact that the inner harbor has been maintained and operated in part from public taxes as well as boat rentals, the preference, if it may be called that, has an aura of artificiality rather than a valid relation or purpose. As stated in Am.Jur.2d, "Constitutional Law", Sec. 510, p. 894: "There is a difference between a statute making certain regulations applicable to residents of a certain territory, which may be valid, and one imposing conditions upon such persons as may not happen to be residents of a particular territory, which latter distinction is invalid." Again, in Sec. 516, Ibid, p. 901: "In considering the application of the equal protection clause of the Fourteenth Amendment to legislation discriminating between residents and non-residents of a state it must be kept in mind that the clause cannot be invoked unless the action of a state denies the equal protection of the laws to persons 'within its jurisdiction.' If persons are, however, in the purview of this clause, within the jurisdiction of a state, the clause guarantees to all so situated, whether citizens or residents of the state or not, the protection of the state's laws equally with its own citizens."

The Court is mindful that the growth in population and economy of Jackson County has brought about the present dilemma of the Board of Supervisors and the Inner Harbor Committee in not having sufficient boat slips, and that they would like to give preference to residents. However, it is this Court's conclusion that their effort must fail for two reasons—the nunc pro tunc resolutions and orders of the board are invalid, and the attempt to discriminate between resident and non-resident lessees of public property does not comport with equal protection of the laws.

It may be that there are alternative actions which this board may pursue, such as raising rental rates to non-resi-

dents, just as hunting and fishing licenses are more expensive to non-residents of the state without offending constitutional mandates. Suffice it to say, the Court finds that the present attempt to oust non-residents of Jackson County from use for pay of the boat slips in a public harbor is repugnant to the Constitution.

A proposed order may be submitted making the temporary restraining order permanent. Costs of court are taxed to the defendants.