GENERAL TELEPHONE COMPANY OF THE NORTH-
WEST, INC., ET AL. *v.* EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION ET AL.

No. 79–488.   Argued March 25, 26, 1980—Decided May 12, 1980

WHITE, J., delivered the opinion of the Court, in which BRENNAN, STEWART, MARSHALL, and BLACKMUN, JJ., joined. BURGER, C. J., and POWELL, REHNQUIST, and STEVENS, JJ., filed a dissenting statement, *post*, p. 334.

*James R. Dickens* argued the cause for petitioners. With him on the briefs were *C. Lee Coulter* and *N. Huntley Holland.*

*Deputy Solicitor General Wallace* argued the cause for respondents. With him on the brief for the federal respond-

ent were *Solicitor General McCree, Leroy D. Clark, Joseph T. Eddins,* and *Lutz Alexander Prager.* *Herman L. Wacker* filed a memorandum for Local Union No. 89, International Brotherhood of Electrical Workers, respondent under this Court's Rule 21 (4).*

Mr. Justice White delivered the opinion of the Court.

The issue in this case is whether the Equal Employment Opportunity Commission (EEOC) may seek classwide relief under § 706 (f)(1) of Title VII of the Civil Rights Act of 1964 (Title VII) without being certified as the class representative under Rule 23 of the Federal Rules of Civil Procedure. The Court of Appeals for the Ninth Circuit held that certification was not required. 599 F. 2d 322 (1979). Because this is a recurring issue on which the federal courts are divided,[1] we granted certiorari, 444 U. S. 989 (1979). We affirm the judgment.

I

Four employees of General Telephone Company of the Northwest, Inc. (General Telephone), filed charges with the EEOC complaining of sex discrimination in employment. After investigation, the EEOC found reasonable cause to suspect discrimination against women, and in April 1977 brought suit in the United States District Court for the Western District of Washington under § 706 (f)(1) of Title VII, as amended, § 4, 86 Stat. 105, 42 U. S. C. § 2000e–5

---

*Avrum M. Goldberg, William R. Weissman, Robert E. Williams, Douglas S. McDowell,* and *Philip Elman* filed a brief for the Equal Employment Advisory Council as *amicus curiae* urging reversal.

*Barry L. Goldstein* and *Jack Greenberg* filed a brief for the N. A. A. C. P. Legal Defense and Educational Fund, Inc., as *amicus curiae* urging affirmance.

[1] The Fifth Circuit previously addressed this same issue and held that certification was required. *EEOC* v. *D. H. Holmes Co., Ltd.,* 556 F. 2d 787 (1977), cert. denied, 436 U. S. 962 (1978). The District Courts have decided the issue both ways.

(f)(1).[2]   The EEOC named as defendants General Telephone and its subsidiary, West Coast Telephone Company of California, Inc. (hereinafter collectively referred to as General Telephone), as well as the certified bargaining agent, Local Union No. 89, International Brotherhood of Electrical Workers.   The complaint alleged discrimination against female employees in General Telephone's facilities in the States of California, Idaho, Montana, and Oregon, in the form of restrictions on maternity leave, access to craft jobs, and promotion to managerial positions; it sought injunctive relief and backpay for the women affected by the challenged practices.

The complaint did not mention Federal Rule of Civil Procedure 23,[3] and the EEOC did not seek class certification pur-

---

[2] Section 706 (f)(1) provides in pertinent part:

"If within thirty days after a charge is filed with the Commission . . . , the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. . . .   The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission . . . .   If a charge filed with the Commission pursuant to subsection (b) is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d), whichever is later, the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice."

[3] Rule 23 provides in pertinent part:

"(a) Prerequisites to a Class Action.

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact com-

suant to that Rule. In August 1977, the EEOC moved pursuant to Federal Rule of Civil Procedure 42 (b) "for an order bifurcating the issue of class liability from the issue of individual damages." The District Court referred the motion to a Magistrate, see Title VII, § 706 (f)(5), and General Telephone moved "for an order dismissing the class action aspects" of the complaint.[4]

---

mon to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable.

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

[4] Local Union No. 89, International Brotherhood of Electrical Workers, did not join in this motion. Discussions were underway between the union and the EEOC to resolve the allegations in the complaint against the

The Magistrate concluded that the EEOC was not required to comply with Rule 23 and recommended that the motion be denied. The District Court adopted the recommendation, denied the motion to dismiss, and then certified the issue for interlocutory appeal to the Ninth Circuit. The Court of Appeals accepted the appeal, see 28 U. S. C. § 1292 (b), and affirmed the District Court's ruling.

## II

We agree with the Court of Appeals that Rule 23 is not applicable to an enforcement action brought by the EEOC in its own name and pursuant to its authority under § 706 to prevent unlawful employment practices.[5] We rely on the language of Title VII, the legislative intent underlying the 1972 amendments to Title VII, and the enforcement procedures under Title VII prior to the amendments.

## A

Title VII protects all employees of and applicants for employment with a covered employer, employment agency, labor organization, or training program against discrimination based on race, color, religion, sex, or national origin. Section 706 (a) empowers the EEOC "to prevent any person from engaging in any unlawful . . . practice" as set forth in the Title. Sec-

union. The union also did not participate in the appeal to the Ninth Circuit following the denial of the motion to dismiss. On December 18, 1978, the District Court entered a consent decree against the union; General Telephone's cross-claim for judgment against the union if General Telephone is found liable on the sex discrimination claims is still pending.

The union also did not join in General Telephone's petition for certiorari and is, therefore, a respondent in this Court. See this Court's Rule 21 (4).

[5] Petitioners characterize this action as a "class action"; the EEOC characterizes it as an action "affecting a class of individuals." We need not choose between these characterizations. The issue is whether an action, however it is styled, brought by a Government agency to enforce the federal law with whose enforcement the agency is charged is subject to the requirements of Rule 23.

tion 706 (f) (1) specifically authorizes the EEOC to bring a civil action against any respondent not a governmental entity upon failure to secure an acceptable conciliation agreement,[6] the purpose of the action being to terminate unlawful practices and to secure appropriate relief, including "reinstatement or hiring . . . , with or without back pay," for the victims of the discrimination. See § 706 (g).

Title VII thus itself authorizes the procedure that the EEOC followed in this case. Upon finding reasonable cause to believe that General Telephone had discriminated against female employees, the EEOC filed suit seeking a permanent injunction against the discriminatory practices, remedial action to eradicate the effect of past discrimination, and "make whole" backpay, with interest, for persons adversely affected by the unlawful practices. Given the clear purpose of Title VII, the EEOC's jurisdiction over enforcement, and the remedies available, the EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals. Its authority to bring such actions is in no way dependent upon Rule 23, and the Rule has no application to a § 706 suit.

Of course, Title VII defendants do not welcome the prospect of backpay liability; but the law provides for such liability and the EEOC's authority to sue for it. Moreover, the EEOC here requested relief only on behalf of "those persons adversely affected" and "in an amount to be proved at trial." App. 11. There is no claim or suggestion of unjustified, windfall backpay awards. That backpay relief is authorized is no basis for imposing the Rule 23 framework in an EEOC enforcement action. We do no more than follow a straightforward reading of the statute, which seems to us to authorize the EEOC to sue in its own name to enforce federal law by

---

[6] The Attorney General is authorized to bring suit against a governmental entity.

obtaining appropriate relief for those persons injured by discriminatory practices forbidden by the Act.

## B

This understanding of the statute is supported by the purpose of the 1972 amendments of providing the EEOC with enforcement authority. The purpose of the amendments, plainly enough, was to secure more effective enforcement of Title VII. As Title VII was originally enacted as part of the Civil Rights Act of 1964, the EEOC's role in eliminating unlawful employment practices was limited to "informal methods of conference, conciliation, and persuasion." Civil actions for enforcement upon the EEOC's inability to secure voluntary compliance could be filed only by the aggrieved person. § 706 (e), 78 Stat. 260. Congress became convinced, however, that the "failure to grant the EEOC meaningful enforcement powers has proven to be a major flaw in the operation of Title VII."[7] S. Rep. No. 92–415, p. 4 (1971). The 1972 amendments to § 706 accordingly expanded the EEOC's enforcement powers by authorizing the EEOC to bring a civil action in federal district court against private employers reasonably suspected of violating Title VII. In

---

[7] The Senate Report on the amendments notes:

"The most striking deficiency of the 1964 Act is that the EEOC does not have the authority to issue judicially enforceable orders to back up its findings of discrimination. . . .

"As a consequence, unless the Department of Justice concludes that a pattern or practice of resistance to Title VII is involved, the burden of obtaining enforceable relief rests upon each individual victim of discrimination, who must go into court as a private party, with the delay and expense that entails, in order to secure the rights promised him under the law." S. Rep. No. 92–415, p. 4 (1971).

The Senate Committee contemplated EEOC enforcement through an administrative proceeding followed by a cease-and-desist order with review in the appropriate United States court of appeals. Although a floor amendment changed the procedure to a civil suit in the district court, the policy remained the same.

so doing, Congress sought to implement the public interest as well as to bring about more effective enforcement of private rights. The amendments did not transfer all private enforcement to the EEOC and assign to that agency exclusively the task of protecting private interests. The EEOC's civil suit was intended to supplement, not replace, the private action. Cf. *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36, 45 (1974). The EEOC was to bear the primary burden of litigation, but the private action previously available under § 706 was not superseded. Under § 706 (f)(1), the aggrieved person may bring his own action at the expiration of the 180-day period of exclusive EEOC administrative jurisdiction if the agency has failed to move the case along to the party's satisfaction, has reached a determination not to sue, or has reached a conciliation or settlement agreement with the respondent that the party finds unsatisfactory. The aggrieved person may also intervene in the EEOC's enforcement action. These private-action rights suggest that the EEOC is not merely a proxy for the victims of discrimination and that the EEOC's enforcement suits should not be considered representative actions subject to Rule 23. Although the EEOC can secure specific relief, such as hiring or reinstatement, constructive seniority, or damages for backpay or benefits denied, on behalf of discrimination victims, the agency is guided by "the overriding public interest in equal employment opportunity . . . asserted through direct Federal enforcement." 118 Cong. Rec. 4941 (1972). When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination.[8]

---

[8] Cf. *Occidental Life Ins. Co.* v. *EEOC*, 432 U. S. 355, 368 (1977) ("[U]nder the procedural structure created by the 1972 amendments, the EEOC does not function simply as a vehicle for conducting litigation on behalf of private parties; it is a federal administrative agency charged with the responsibility of investigating claims of employment discrimina-

## C

Prior to 1972, the only civil actions authorized other than private lawsuits were actions by the Attorney General upon reasonable cause to suspect "a pattern or practice" of discrimination. These actions did not depend upon the filing of a charge with the EEOC; nor were they designed merely to advance the personal interest of any particular aggrieved person. Prior to 1972, the Department of Justice filed numerous § 707 pattern-or-practice suits. 118 Cong. Rec. 4080 (1972) (remarks of Sen. Williams). In none was it ever suggested that the Attorney General sued in a representative capacity or that his enforcement suit must comply with the requirements of Rule 23; [9] and this was true even though specific relief was awarded to individuals not parties to the suit.[10]

---

tion and settling disputes, if possible, in an informal, noncoercive fashion"). Cf. also *Porter* v. *Warner Holding Co.*, 328 U. S. 395, 397–398 (1946) (The Price Administrator "invoke[s] the jurisdiction of the District Court to enjoin acts and practices made illegal by the [Emergency Price Control Act of 1942] and to enforce compliance with the Act. . . . [S]ince the public interest is involved in a proceeding of this nature, [the District Court's] equitable powers assume an even broader and more flexible character than when only a private controversy is at stake").

[9] Nor has it been so suggested in § 707 suits brought since 1972. In fact, the only Court of Appeals to hold that the EEOC must comply with Rule 23 in its § 706 actions has intimated that the procedural requirements would not apply in a § 707 action. The Fifth Circuit, in *EEOC* v. *D. H. Holmes Co.*, although imposing the Rule 23 strictures on § 706 actions, noted "emphatically that this is *not* a situation in which application of procedural rules will thwart any substantive right whatsoever.

"If, for any reason, EEOC is not certified below but still believes a pattern or practice of discrimination exists in the Holmes Company, its recourse is to file a suit under § 707. . . ." 556 F. 2d, at 792, n. 8.

[10] See, *e. g.*, *United States* v. *Chesapeake & O. R. Co.*, 471 F. 2d 582, 589–590 (CA4 1972) (constructive seniority), cert. denied *sub nom. Railroad Trainmen* v. *United States*, 411 U. S. 939 (1973); *United States* v. *St. Louis-S. F. R. Co.*, 464 F. 2d 301, 309–311 (CA8 1972) (en banc) (preferential hiring and constructive seniority), cert. denied *sub nom. Transportation Union* v. *United States*, 409 U. S. 1107 (1973); *United*

The 1972 amendments, in addition to providing for a § 706 suit by the EEOC pursuant to a charge filed by a private party, transferred to the EEOC the Attorney General's authority to bring pattern-or-practice suits on his own motion. In discussing the transfer,[11] Senator Hruska described § 707 actions as "in the nature of class actions." 118 Cong. Rec. 4080 (1972). Senator Williams then noted that, upon the transfer, "[t]here will be no difference between the cases that the Attorney General can bring under section 707 as a 'pattern or practice' charge and those which the [EEOC] will be able to bring." *Id.*, at 4081. Senator Javits agreed with both Senators: "The EEOC . . . has the authority to institute exactly the same actions that the Department of Justice does under pattern or practice."[12] Senator Javits further noted

---

*States* v. *Ironworkers Local 86,* 443 F. 2d 544, 548, 552–554 (CA9) (preferential hiring), cert. denied, 404 U. S. 984 (1971).

Since 1972, backpay has also been awarded in pattern-or-practice suits, and without suggestion that Rule 23 is implicated. *E. g., EEOC* v. *Detroit Edison Co.,* 515 F. 2d 301, 314–315 (CA6 1975); *United States* v. *Georgia Power Co.,* 474 F. 2d 906, 919–920 (CA5 1973); cf. *United States* v. *N. L. Industries, Inc.,* 479 F. 2d 354, 378–380 (CA8 1973). And we see nothing to indicate that prior to 1972, in cases where backpay was requested and denied, the result rested on the ground that the Government could not obtain individual relief in its enforcement action without compliance with Rule 23. See, *e. g., United States* v. *St. Louis-S. F. R. Co., supra,* at 311; *United States* v. *Hayes Int'l Corp.,* 456 F. 2d 112, 121 (CA5 1972).

[11] The legislative debate at this point focused on whether and when to make the transfer. The issue arose in the wake of the decision the day before to empower the EEOC to proceed by civil action and not cease-and-desist order. As finally agreed upon, the transfer was to occur two years after the effective date of the amendments.

[12] Senator Javits goes on here to note that "[t]hese are essentially class actions, and if they can sue for an individual claimant, then they can sue for a group of claimants." Given its juxtaposition between the discussion of the Department of Justice's pattern-or-practice actions and the EEOC's newly granted ability to sue, it is unclear whether the Senator's characterization here as "class actions" referred to § 707 or § 706.

that "if [the EEOC] proceeds by suit, then it can proceed by class suit. If it proceeds by class suit, it is in the position of doing exactly what the Department of Justice does in pattern and practice suits. . . . [T]he power to sue . . . fully qualifies the [EEOC] to take precisely the action now taken by the Department of Justice." *Id.*, at 4081–4082. As we have said, the Department of Justice brought its suits in the name of the United States and without obtaining certification under Rule 23—it did not sue as a representative of the persons aggrieved—and we must assume Congress' familiarity with the procedure. It is clear that with the 1972 amendments Congress intended the EEOC to proceed in the same manner; and thus, given the context, it is similarly clear that the references in debate to "class" suits referred to the availability of relief and not the procedure that would be applicable in such actions.[13]

### III

It is also apparent that forcing EEOC civil actions into the Rule 23 model would in many cases distort the Rule as it is

---

[13] Petitioners rely heavily on the statement by Senator Javits immediately following the quotation set out in n. 12, *supra*, that "this is provided for by the rules of civil procedure in the Federal courts." The Senator then elaborated:

"I have referred to the rules of civil procedure. I now refer specifically to rule 23 of those rules, which is entitled Class Actions and which give[s] the opportunity to engage in the Federal Court in class actions by properly suing parties. We ourselves have given permission to the EEOC to be a properly suing party." 118 Cong. Rec. 4082 (1972).

Again, given the context, the point that emerges most clearly is that the Senator's comments merely compare the effect of the amendments to § 706 with the Rule 23 procedure; the comments were not intended to impose the requirements of the Rule on the § 706 action. Indeed, the idea that the EEOC's enforcement suits were to be subject to the full range of Rule 23 requirements is completely inconsistent with the Senator's own comparisons, noted in text, between the EEOC's authority under § 706 as amended and the authority of the Department of Justice under the original version of § 707.

commonly interpreted and in others foreclose enforcement actions not satisfying prevailing Rule 23 standards but seemingly authorized by § 706 (f)(1). The undesirability of doing either supports our conclusion that the procedural requirements of the Rule do not apply.

## A

Rule 23 (a), see n. 3, *supra,* imposes the prerequisites of numerosity, commonality, typicality, and adequacy of representation. When considered in the light of these requirements, it is clear that the Rule was not designed to apply to EEOC actions brought in its own name for the enforcement of federal law. Some of the obvious and more severe problems are worth noting.

The numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations. Title VII, however, applies to employers with as few as 15 employees. When judged by the size of the putative class in various cases in which certification has been denied, this minimum would be too small to meet the numerosity requirement.[14] In such cases, applying Rule 23 would require the EEOC to join all aggrieved parties despite its statutory authority to proceed solely in its own name.

The typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiff's claims. If Rule 23 were applicable to EEOC enforcement actions, it would

---

[14] See, *e. g., Monarch Asphalt Sales Co.* v. *Wilshire Oil Co. of Texas,* 511 F. 2d 1073, 1077 (CA10 1975) (37 class plaintiffs); *Peterson* v. *Albert M. Bender Co.,* 75 F. R. D. 661, 667 (ND Cal. 1977) (35–45); *Murray* v. *Norberg,* 423 F. Supp. 795, 798 (RI 1976) (fewer than 20); *Chmieleski* v. *City Products Corp.,* 71 F. R. D. 118, 150–151 (WD Mo. 1976) (22); *Lopez* v. *Jackson County Bd. of Supervisors,* 375 F. Supp. 1194, 1196–1197 (SD Miss. 1974) (16); *Moreland* v. *Rucker Pharmacal Co.,* 63 F. R. D. 611, 613–614 (WD La. 1974) (26); *Anderson* v. *Home Style Stores, Inc.,* 58 F. R. D. 125, 130–131 (ED Pa. 1972) (18).

seem that the Title VII counterpart to the Rule 23 named plaintiff would be the charging party, with the EEOC serving in the charging party's stead as the representative of the class. Yet the Courts of Appeals have held that EEOC enforcement actions are not limited to the claims presented by the charging parties. Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable. See, *e. g., EEOC* v. *General Electric Co.,* 532 F. 2d 359, 366 (CA4 1976); *EEOC* v. *McLean Trucking Co.,* 525 F. 2d 1007, 1010 (CA6 1975). The latter approach is far more consistent with the EEOC's role in the enforcement of Title VII than is imposing the strictures of Rule 23, which would limit the EEOC action to claims typified by those of the charging party.

We note finally that the adequate-representation requirement is typically construed to foreclose the class action where there is a conflict of interest between the named plaintiff and the members of the putative class. In employment discrimination litigation, conflicts might arise, for example, between employees and applicants who were denied employment and who will, if granted relief, compete with employees for fringe benefits or seniority. Under Rule 23, the same plaintiff could not represent these classes. But unlike the Rule 23 class representative, the EEOC is authorized to proceed in a unified action and to obtain the most satisfactory overall relief even though competing interests are involved and particular groups may appear to be disadvantaged. The individual victim is given his right to intervene for this very reason. The EEOC exists to advance the public interest in preventing and remedying employment discrimination, and it does so in part by making the hard choices where conflicts of interest exist. We are reluctant, absent clear congressional guidance, to subject § 706 (f)(1) actions to requirements that might disable the enforcement agency from advancing the public interest in the manner and to the extent contemplated by the statute.

## B

We observe that General Telephone does not urge application of Rule 23 to EEOC enforcement actions in the expectation or hope that the agency could not comply and would be forced to drop its action against General Telephone. Indeed, petitioners urge that the EEOC, in proper cases, would be able to meet the Rule 23 requirements. Brief for Petitioners 16–22. As we understand, petitioners' objective in seeking to invoke Rule 23 is aimed at securing a judgment in the EEOC's suit that will be binding upon all individuals with similar grievances in the class or subclasses that might be certified. We are sensitive to the importance of the res judicata aspects of Rule 23 judgments, but we are not free to depart from what we believe the statutory design to be.

We have noted in a related context the interface between employment discrimination remedies under a collective-bargaining agreement and those under Title VII. *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36 (1974), held that the employee did not forfeit Title VII relief by invoking the grievance and arbitration procedures under the collective-bargaining contract. We noted that "federal courts have been assigned plenary powers to secure compliance with Title VII." *Id.*, at 45. Similarly, the courts retain remedial powers under Title VII despite a finding by the EEOC of no reasonable cause to believe that Title VII has been violated. *McDonnell Douglas Corp.* v. *Green,* 411 U. S. 792, 798–799 (1973). We have also stressed the strong congressional intent to provide "make whole" relief to Title VII claimants: " 'The provisions of this subsection are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible. . . .' 118 Cong. Rec. 7168 (1972)." *Albemarle Paper Co.* v. *Moody,* 422 U. S. 405, 421 (1975).

The 1972 amendments retained the private right of action as "an essential means of obtaining judicial enforcement of

Title VII," *Alexander* v. *Gardner-Denver Co., supra,* at 45, while also giving the EEOC broad enforcement powers. In light of the "general intent to accord parallel or overlapping remedies against discrimination," 415 U. S., at 47, we are unconvinced that it would be consistent with the remedial purpose of the statutes to bind all "class" members with discrimination grievances against an employer by the relief obtained under an EEOC judgment or settlement against the employer. This is especially true given the possible differences between the public and private interests involved. Cf. *Occidental Life Ins. Co.* v. *EEOC,* 432 U. S. 355 (1977).

The courts, however, are not powerless to prevent undue hardship to the defendant and should perform accordingly. The employer may, by discovery and other pretrial proceedings, determine the nature and extent of the claims that the EEOC intends to pursue against it. Here, as we have noted, the EEOC moved to try initially the issue of liability, not to avoid proving individual claims, but merely to postpone such proof. It also goes without saying that the courts can and should preclude double recovery by an individual. Cf. *Alexander* v. *Gardner-Denver Co., supra,* at 51, n. 14. Also, where the EEOC has prevailed in its action, the court may reasonably require any individual who claims under its judgment to relinquish his right to bring a separate private action.[15] The Title VII remedy is an equitable one; a court of equity should adjust the relief accordingly.

## IV

We hold, therefore, that the EEOC may maintain its § 706 civil actions for the enforcement of Title VII and may seek specific relief for a group of aggrieved individuals without first obtaining class certification pursuant to Federal Rule

---

[15] An acceptance of the benefits under an EEOC-negotiated settlement could be drafted to provide for a similar relinquishment.

of Civil Procedure 23.[16]   The judgment of the Ninth Circuit is accordingly

*Affirmed.*

THE CHIEF JUSTICE, MR. JUSTICE POWELL, MR. JUSTICE REHNQUIST, and MR. JUSTICE STEVENS, for the reasons that are well stated by the Court of Appeals for the Fifth Circuit in *EEOC* v. *D. H. Holmes Co., Ltd.,* 556 F. 2d 787 (1977), cert. denied, 436 U. S. 962 (1978), would reverse the judgment in this case.

---

[16] We by no means suggest that the Federal Rules generally are inapplicable to the EEOC's §706 actions.   Title VII itself refers to Rule 53, see § 706 (f) (5), and the Court itself has discussed Rule 54 (c).   See *Albemarle Paper Co.* v. *Moody,* 422 U. S. 405, 424 (1975).   We hold only that the nature of the EEOC's enforcement action is such that it is not properly characterized as a "class action" subject to the procedural requirements of Rule 23.