678 F.2d 1190
 28 Fair Empl.Prac.Cas. 1463,
29 Empl. Prac. Dec. P 32,696
Genevieve S. ADAMS; Louise Bertha; Algerie R. (Kelley)
Brigerman; Anne Brown; Carrie B. Chaffin; Leila B.
Harthanson; Loretta M. Hinkle; Nellie Kern; Martha McGinn;
Bertha Mabray; Anna M. Miller; Dorothy N. Shawker; Claretha
Smith; Lorrayne M. Soethe; Margie Stover; Shirley S.
Sunderland; Ethel Wimpling, Appellants,
v.
The PROCTOR & GAMBLE MANUFACTURING CO., Appellee.
E.E.O.C., Amicus Curiae.
 No. 81-1197.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 6, 1981.
Decided May 18, 1982.
 
 Sidney Blum, Baltimore, Md., for appellants.
 Colleen M. O'Connor, Washington, D. C. (Leroy D. Clark, Gen. Counsel, Philip B. Sklover, Acting Associate Gen. Counsel, Vincent Blackwood, Asst. Gen. Counsel, Washington, D. C., on brief), for amicus curiae.
 John A. McGuinn, Washington, D. C. (Guy Farmer, Farmer, Wells, McGuinn, Flood, Sibal & Bechtel, Washington, D. C., Thomas B. Eastman, Ober, Grimes & Shriver, Baltimore, Md., T. L. Overbey, Legal Dept., Cincinnati, Ohio, on brief), for appellee.
 Before HAYNSWORTH, Senior Circuit Judge, and PHILLIPS and SPROUSE, Circuit Judges.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 In 1976 the EEOC brought an employment discrimination action under § 706(f)(1) of Title VII, 42 U.S.C. § 2000e-5(f)(1)[1] (1976), against Proctor & Gamble, on behalf of more than two dozen employees who had filed charges with the agency. During the three-year discovery period that followed no Proctor & Gamble employee availed herself of the statutory right under § 706(f)(1) to intervene in the agency's civil action. Settlement negotiations between the agency and the employer eventually resulted in a consent decree.
 
 
 2
 During the final stages of those negotiations the parties to the litigation took different positions concerning the effect of any consent decree on potential private rights of action against Proctor & Gamble by aggrieved individual charging parties. The EEOC asserted that the charging parties were only potential witnesses in its agency action and that therefore the settlement decree would not cut off individual rights of action for those persons refusing to sign a release in return for compensation under the settlement. The agency told the company that it intended to issue right-to-sue letters to employees who did not accept monetary awards under the consent decree. The company maintained that the settlement applied to the entire class of affected employees and that the agency's institution of suit on their behalf precluded subsequent private § 706 suits on the same issues.
 
 
 3
 In mid-1980 the EEOC issued right-to-sue letters to those charging parties who had rejected awards under the decree. Sixteen Proctor & Gamble workers then sued individually within the appropriate statutory period. The district court granted the company's motion to dismiss on the basis that the right-to-sue letters were invalidly issued. The employees appealed that dismissal and, with the EEOC as amicus, contend that agency settlement of § 706 litigation does not bar subsequent private actions by aggrieved employees unwilling to accept terms of the resulting consent decree. Proctor & Gamble urges that the statutory language of § 706 expressly precludes the EEOC from issuing right-to-sue letters to charging parties after the Commission has instituted its own action, and that the private interests of the charging parties are fully protected by their absolute right of intervention under § 706(f)(1).
 
 
 4
 We hold that the private rights of action of the plaintiff-employees were not terminated by the institution of the § 706 agency action or the resulting consent decree and that the EEOC could properly issue them right-to-sue letters. We therefore reverse and remand for further proceedings.
 
 
 5
 * We think that acceptance of the position urged by the employee-plaintiffs and the EEOC as amicus is compelled by the legislative history surrounding the 1972 grant to the EEOC of enforcement power through agency actions under § 706; a comparison to related enforcement provisions in other labor legislation; Congress' obvious intent to provide for parallel and possibly overlapping remedies under Title VII; and the Supreme Court's recent analysis of the intended operation of § 706(f)(1) in General Telephone Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).[2]
 
 
 6
 The 1972 amendments to Title VII expanded the EEOC's original role as conciliator by vesting the agency with authority under § 706 to file its own actions on behalf of employees who lodged formal charges with the agency. At the same time, the amended § 706(f)(1) still authorized aggrieved employees to prosecute private actions. But that authorization was explicitly conditioned on receipt by the employees of right-to-sue letters from the EEOC, and the EEOC's right to issue right-to-sue letters was in turn conditioned upon the existence of one of three disjunctively stated circumstances. The first two of these-that the EEOC had dismissed the charge or not filed an agency action within 180 days of the charge-are concededly not applicable here. Whether the third condition exists is the dispositive issue. Under it, a right-to-sue letter can be issued "If ... the Commission has not entered into a conciliation agreement to which the person aggrieved is a party."
 
 
 7
 There is no dispute-though the statutory language is not the clearest-that this permits the issuance of a right-to-sue letter to any individual charging party who is not "a party" to an extra-judicial "conciliation" agreement. Nor is it disputed that the refusal to accept any individual award provided by such an agreement makes one not "a party" to it within the meaning of this provision. Proctor & Gamble, contending for a narrowly literal interpretation of the language, says that this is the limit of what it means: that it does not authorize the issuance of a right-to-sue letter to any employee once an agency action is filed, notwithstanding the employee may have declined to intervene in the action and has affirmatively rejected any award authorized by a consent decree entered in the action.[3]
 
 
 8
 We disagree with this interpretation. We conclude instead that the statute contemplates that any charging party who has declined to intervene as a formal party in an agency action and who has also declined to accept any individual monetary award provided by a consent decree entered in the action may be issued a right-to-sue letter under § 706(f)(1).
 
 
 9
 * In the first place, we think that the legislative history of § 706 reflects a Congressional determination that the filing of a civil action by the EEOC should not automatically terminate private rights of action. When the House and Senate were considering granting the EEOC cease-and-desist authority instead of the authority merely to maintain enforcement actions, Congress expressly indicated that the exercise of cease-and-desist power would cut off private rights of action: "(t)he right of an aggrieved person to bring a civil action ... shall terminate once the Commission has issued a complaint...." See S.Rep.No.92-415, 92 Cong., 1st Sess. 49 (1971), reprinted in Legislative History of the Equal Employment Opportunity Act of 1972 392 (1972) (hereinafter Leg.Hist.). That termination clause was deleted when § 706 was further amended to authorize the EEOC only to maintain enforcement actions in the courts.
 
 
 10
 Significantly, the amended Senate bill at first premised the private right of action on EEOC failure to initiate civil action: "If the Commission fails to obtain voluntary compliance and fails or refuses to institute a civil action ... within 180 days ... a civil action may be brought (by the charging party)...." 118 Cong.Rec. 1068 (1972), Leg.Hist. 890 (emphasis added). But that conjunctive language fell away with Senator Javits' emendation, which was eventually adopted as the current language of § 706(f)(1).[4] Senator Javits expressed his concern for protecting the rights of charging parties where the EEOC obtains a compromise satisfactory to the Commission but not necessarily responsive to the interests of individual employees.
 
 
 11
 Obviously, some element of consent, or what is tantamount to it, is urgently necessary in terms of common equity if you are not to get into a situation where you cut off a complainant's right and the complainant cannot do anything about it and the agency which cut off his right is a party to the settlement.
 
 
 12
 118 Cong.Rec. 1068, Leg.Hist. 891.
 
 
 13
 The Joint Conference analysis of the bill which was eventually enacted in 1972 approached the third clause in § 706(f)(1) from a broad perspective: the three circumstances described in § 706 were said to "allow the person aggrieved to pursue his or her remedy under (Title VII) in the courts where there is agency inaction, dalliance or dismissal of the charge, or unsatisfactory resolution." 118 Cong.Rec. 7168, Leg.Hist. 1847 (emphasis added). There is no basis in legislative history for concluding that Congress intended that only unacceptable pre-suit settlements, and not unacceptable consent decrees entered after formal commencement of an agency action, should keep private rights of action alive.
 
 
 14
 In further support of this analysis, the employees and the EEOC point to other remedial statutes in which Congress, intending automatic termination of private right to sue upon the commencement of judicial action by an agency, expressly so provided.[5] Coupled with the fact, discussed above, that Congress considered such a provision in a preliminary version of § 706 and failed to enact it, we find this statutory comparison persuasive of the point urged-that here Congress did not intend automatic termination.
 
 B
 
 15
 Next, we think that Supreme Court readings of Title VII in general and of § 706 in particular support this interpretation. The Court early found in Title VII "a general intent (by Congress) to accord parallel or overlapping remedies against discrimination," Alexander v. Gardner-Denver Co., 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). In recognition of this general remedial purpose, the Court has recently suggested that, given "the possible differences between the public and private interests involved" in EEOC and private actions under § 706, it is "unconvinced that it would be consistent with the remedial purposes of the statutes to bind all 'class' members with discrimination grievances against an employer by the relief obtained under an EEOC judgment or settlement against the employer." General Telephone Co., 446 U.S. at 333, 100 S.Ct. at 1708 (emphasis added).[6]
 
 
 16
 More particularly, in General Telephone the Court seemed specifically to read the disputed provision of § 706(f)(1) in the way urged here by the employees. Discussing the relationship between agency and private rights of action under § 706, the Court said that "(u)nder § 706(f)(1), the aggrieved person may bring his own action ... if the agency has ... reached a conciliation or settlement agreement with the (employer) that the party finds unsatisfactory." Id. at 326, 100 S.Ct. at 1704 (emphasis added). By this reading the Court seems to understand that under § 706(f)(1) "conciliation agreement" means any form of negotiated settlement of § 706 charges by the EEOC and, further, that not being "a party" to such an agreement means simply rejecting or not accepting its terms.
 
 
 17
 This is further borne out by the General Telephone Court's forthright acceptance of the threat of multiple suits that this interpretation creates. Addressing this possibility, the Court was at pains to suggest practical means for avoiding it by other devices than the direct one of simply giving class-action type preclusive effect to any judgment entered in an agency § 706 action. The Court suggested that a reasonable safeguard against multiple suits might be a court requirement that any employee claiming under an EEOC judgment be made "to relinquish his right to bring a separate private action." Id. at 333, 100 S.Ct. at 1708. In the same way, the Court observed, "(a)n acceptance of the benefits under an EEOC-negotiated settlement could be drafted to provide for a similar relinquishment." Id. at 333 n.15, 100 S.Ct. at 1708 n.15.[7] Implicit to us in this suggestion is its obverse, that rejection of individual benefits under an EEOC consent decree with concomitant refusal to release private rights results in retention of those rights as the decree rights are foregone. That, of course, is what the plaintiff-employees did here.
 
 C
 
 18
 In a fall-back or alternative position Proctor & Gamble contends that failure of the plaintiffs to intervene in the EEOC action-as they could of right under § 706(f)-should be held a waiver of their private rights of action in any event. There is no statutory or Supreme Court authority for this proposition and we reject it. In the first place, despite occasional suggestions of the possibility, see, e.g., Provident Tradesmens Bank & Trust Co. v. Lumbermen's Mutual Casualty Co., 390 U.S. 102, 114, 88 S.Ct. 733, 740, 19 L.Ed.2d 936 (1968); and see generally Note, Preclusion of Absent Disputants to Compel Intervention, 79 Col.L.Rev. 1551 (1979) (advocating adoption of principle under due process safeguards, but recognizing that it is not now generally applied), there is no specific procedural rule nor generally recognized principle of compulsory intervention comparable to those which, at peril of preclusion, compel certain counterclaims in federal practice. See Fed.R.Civ.P. 13(a). More particularly with reference to the intervention right provided by § 706(f) (1), the Supreme Court has recently identified as its purpose the provision of opportunity for charging parties to assert their competing individual interests in the context of a "unified" EEOC action in which "the most satisfactory overall relief" may be the goal. General Telephone, 446 U.S. at 331, 100 S.Ct. at 1706. Nothing in that rationale suggests that the Court reads § 706 to cut off private rights of action in the event that individual charging parties do not choose to assert those competing interests by intervention in the EEOC action.[8]II
 
 
 19
 Because the EEOC was authorized to issue the right-to-sue letters in the instant case, the district court erred in dismissing the claims based upon a contrary conclusion. The judgment is therefore vacated and the action remanded for further proceedings consistent with this opinion.
 
 
 20
 VACATED AND REMANDED.
 
 HAYNSWORTH, Senior Circuit Judge, dissenting:
 
 21
 I would affirm, substantially for the reasons stated by Judge Northrop in an unreported opinion in this case.
 
 
 22
 The statute seems plain to me that a right to sue letter may not issue if the Commission has filed a suit within one hundred eighty days after the filing of the charge. I am confident there is an implicit exception if the EEOC action is terminated on a basis which would give the judgment no preclusive effect, but a consent decree does have a preclusive effect, and I would not exempt nonconsenting charging parties who have not intervened in the action.
 
 
 23
 The statute does authorize a right to sue letter to a charging party if the Commission has entered into a conciliation agreement and the aggrieved person does not accept its benefits. That is clearly referable, however, to conciliation agreements reached during the conciliation process and not to consent decrees entered for the termination of litigation. An aggrieved person has no right to participate in the negotiation of a conciliation agreement. Once the EEOC files a § 706 action, however, a charging party has an absolute statutory right to intervene. If he exercises that right, he has the right to participate in settlement negotiations and to reject an agreement satisfactory to the EEOC but not to the individual claimant. If he does not exercise the right to intervene, the claimant should be held to have authorized the EEOC to enter into a settlement agreement upon his behalf.
 
 
 24
 In this case, sixteen claimants rejected the benefits provided for them by the consent decree and joined in this action.* None of the sixteen were intervenors in the § 706 action. If they may now maintain individual actions, employers will have little or no incentive to settle § 706 actions brought by the EEOC. If such a settlement binds no claimant, a settlement with EEOC can produce little advantage to the employer while creating a possible floor for future negotiations with attorneys for individual claimants. In the midst of trial, an employer would find no settlement opportunity attractive, for it would know that any beneficiary, who had not intervened, could put it to trial all over again.
 
 
 25
 The policy favoring settlement of law suits underlies the statutory distinction between conciliation agreements and consent decrees. It reinforces the considerations of fairness which distinguish between claimants who cannot participate in the negotiation of conciliation agreements and those who, by intervention in a pending § 706 action, can participate.
 
 
 26
 I read all of the references in the legislative history to non-preclusion as referable to conciliation agreements, which surely was the principal thing in the minds of the members of Congress.
 
 
 27
 There is language in General Telephone Co. v. EEOC, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319, which gives me great pause. The question here was not presented there, however. The Supreme Court there was reviewing a decision of the Ninth Circuit holding that the requirements of Rule 23 of the Federal Rules of Civil Procedure were inapplicable to any action brought by the EEOC under § 706. If the numerosity and other requirements of Rule 23 were applicable to such an action by the EEOC, the effectiveness of the remedy would be greatly impaired. The employer there had sought a holding that Rule 23 applied in order to assure that any judgment would be preclusive of individual claims. There were only four charging parties, but the EEOC alleged apparently pervasive sex discrimination in four western states. Unless Rule 23 were applicable and the class certified, a judgment could not bind potential beneficiaries who had filed no charges and who had not accepted the benefits of the judgment. The dicta have no relevance to the question of the preclusive effect a judgment may have on charging parties, unless one reads the dicta as having been written with attention focused upon the four charging parties, who went unnoticed in that part of the opinion. If the statement were written as applicable to the four charging parties, then the premise of no preclusive effect was an unlitigated assumption. Here on the other hand, the question is the center of this controversy, or would be if everyone involved in this case did not agree that a judgment, as distinguished from a consent decree, would preclude subsequent individual claims by charging parties who had not intervened.
 
 
 28
 Thus I read the Supreme Court's dicta as referring to members of the class who had filed no charges.
 
 
 29
 The statute clearly makes conciliation agreements not binding upon non-consenting claimants. Materials in the legislative history supporting that provision should not be construed as giving a similar effect to consent decrees. After all, a consent decree is a formal judgment which, in the absence of compelling evidence from the Congress, should be given the same preclusive effect as a judgment entered by a court upon its own findings of fact and conclusions of law. In this case, no party suggests that such a judgment, without consent, would not bind charging parties who had not exercised their right of intervention. The EEOC specifically states in its brief that a judgment after full litigation would have a preclusive effect. Surely, within the normal rules of preclusion, the Agency represents the charging parties upon whose behalf and for whose benefit the action is brought.
 
 
 30
 For these reasons, I dissent.
 
 
 
 [1]
 In pertinent part, that subsection provides:
 (f)(1) If within thirty days after a charge is filed with the Commission ..., the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge.... The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission.... If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ..., the Commission has not filed a civil action under this section ..., or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved ....
 
 
 [2]
 Also pointing to this as the proper judicial construction of the concededly ambiguous statutory language is the EEOC's own interpretation-as reflected in its action in the case and its position formally taken as amicus on this appeal. Courts owe "great deference to the interpretation given the statute by the officers or agency charged with its administration." EPA v. National Crushed Stone Ass'n, 449 U.S. 64, 83, 101 S.Ct. 295, 307, 66 L.Ed.2d 268 (1980), citing Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)
 
 
 [3]
 There is, concededly, both lower court and text-writer support for the employer's position. See, e.g., McClain v. Wagner Electric Corp., 550 F.2d 1115 (8th Cir. 1977); and see generally 2 Larson, Employment Discrimination § 49.43, at 9B-83 (1981), citing Crump v. Wagner Elec. Corp., 369 F.Supp. 637 (E.D.Mo.1973) (where individual filed suit prior to EEOC settlement); Player, Federal Employment Discrimination in a Nutshell § 5-7.02, at 234 (2d ed. 1981)
 For reasons stated in this opinion, we simply disagree with these authorities, and particularly with those pre-General Telephone decisions relied upon by Proctor & Gamble in which the courts concluded that the threat of duplicative lawsuits required finding private rights of action terminated by the filing of EEOC actions. See McClain v. Wagner Elec. Corp., 550 F.2d 1115 (8th Cir. 1977); Crump v. Wagner Elec. Corp., 369 F.Supp. 637 (E.D.Mo.1973).
 
 
 [4]
 The Javits amendment, offered to amend Senator Dominick's proposed amendment No. 611, was incorporated into a second Dominick amendment, No. 884. 118 Cong.Rec. 1067-68, Leg.Hist. 889-90; 118 Cong.Rec. 3979, Leg.Hist. 1557
 
 
 [5]
 See Age Discrimination in Employment Act of 1967, § 7(c), 29 U.S.C. § 626(c) ("the right of any person to bring such an action shall terminate upon the commencement of an action by the Secretary ..."); Fair Labor Standards Act of 1938, as amended, (1974), § 16(c), 29 U.S.C. § 216(c) ("the right ... to bring an action ... and ... to become a party plaintiff to any such action shall terminate upon the filing of a complaint by the Secretary ...")
 
 
 [6]
 Directly at issue in General Telephone was the question whether an EEOC action under § 706 must be structured as a class action. The employer in that case contended that it must be so structured, with the obvious purpose, recognized by the Court, of insuring preclusion of all 'class' member claims by any resulting decree. See General Telephone, 446 U.S. at 332-33, 100 S.Ct. at 1708. It was in the course of rejecting this contention that the Court discussed the relationship between the private rights of action and the agency right of action conferred by § 706, and concluded that the statute contemplates their essential independence despite the possibilities for duplicative litigation that this entailed
 
 
 [7]
 This deliberate reaching out by the Supreme Court to recognize that under the statutory scheme employers may need practical protection against individual claims following "an EEOC-negotiated settlement" is at apparent odds with our dissenting Brother's perception that Congress could not have intended a non-binding effect for consent decrees. The specific suggestion is that the resulting disincentive to settle agency actions could not accord with congressional intent, given the general preference for conciliation reflected in the statutory scheme. Conceding the anomaly, it applies as well to the conciliation stage, where, as all agree, this very disincentive is built into the scheme. The greater anomaly would be to treat differently a conciliation agreement formally entered into without filing an agency action and one reached in all essential parts before and merely formalized as a "consent decree" shortly after pro forma filing of an action
 The Northwest Telephone dictum seems plainly to be saying to employers that in view of the non-binding quality of agency "settlement" at any stage they must seek protection outside the statute's operation, and that to the extent protection cannot be privately negotiated they should consider seriously the advantage to be gained by settlement.
 
 
 [8]
 Closely related, indeed possibly dependent upon this view of the consequences of the statutory right to intervene, is the dissent's suggestion that ordinary principles of res judicata suffice to preclude the individual claims here. Consent decrees, it is pointed out, have the same claim preclusive effect as do fully litigated judgments; in consequence, the final consent decree here must have that effect (presumably independently of the agency's statutory right to trigger individual "rights to sue"). That general principle is of course well established, Restatement (Second) of Judgments § 18(1), comment a (1982), but its application under classic doctrine presupposes that the persons against whom it is invoked were either parties to the earlier decree or are otherwise legally bound by it, id. §§ 34, et seq., and at this very point the inquiry under classic res judicata doctrine dead-ends. It has recently been recognized that the question whether non-parties to an agency action, such as plaintiffs here, should be considered legally bound by the agency action is one that "cannot be determined by reference to res judicata policies alone." Id. Reporter's Note to § 41, comment d. The answer finally turns rather on whether the agency's authority is regarded as preemptive, id. comment d, Illustration 7, and this in turn on the question of congressional intent to which our analysis is solely directed
 
 
 *
 Apparently, there were nine or ten other complainants. I am uncertain what happened to them