UNITED STATES, Appellee,

v.

Specialist Four Dennis A. DUCKWORTH,
SSN 106–50–5200, United States
Army, Appellant.

CM 438603.

U. S. Army Court of Military Review.

3 July 1980.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Lawrence D. Galehouse, JAGC, and Captain Allan T. Downen, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Major Ted B. Borek, JAGC, Captain Harry J. Gruchala, JAGC, and Captain Robert D. Higginbotham, JAGC, were on the pleadings for appellee.

Before JONES, GARN and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

JONES, Senior Judge:

This case presents the questions of whether the stop and search of an automobile was illegal and if so whether a passenger who neither owned the automobile nor the items seized could claim the protection of the Fourth Amendment to suppress the testimony of a witness who was identified in the stop and the evidence of items seized in the search.

### I

In the early morning hours of 20 February 1979, the appellant and four of his fellow soldiers decided to return to their messhall at Fort Leonard Wood to take some food.[1] The appellant helped hold open the door and helped receive the food as it was passed from the messhall. They placed the food in the trunk of a car and drove off the reservation.

When the driver of the car stopped for gas in a small town near the post, the gas station attendant noticed milk leaking from the trunk and called this to the driver's attention. The driver moved the car a short distance away from the attendant and stopped, whereupon one of the occupants got out, opened the trunk, took out a leaking five-gallon milk carton and threw it on the ground. Observing this, the gas station attendant called the local (St. Robert) police and reported the group for littering.

The local police dispatcher requested assistance from the police in a nearby town (Waynesville), giving a description of the car, number of occupants, direction of travel, and suspected offense. A patrolman from Waynesville, after receiving the call, spotted the car, stopped it, and asked for registration for the car and identification of passengers. He held the car and occupants in Waynesville until the St. Robert police arrived.

The St. Robert police upon arrival asked the driver to open the trunk. Recognizing

government food in the trunk, one of the St. Robert patrolmen asked the driver where he had gotten it. No rights warning was given. The driver responded that they had found the food near the messhall. The St. Robert patrolmen then arrested all five occupants for littering and for suspected theft of government property. They took them back to St. Robert where they cited them for littering. The police then released the soldiers and the food that was seized to Army criminal investigators.

Eventually charges were preferred against appellant for conspiracy to steal food from the messhall, breaking into the messhall with intent to steal food, and stealing the food in violation of Articles 81, 130 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 930 and 921. The appellant pleaded not guilty.

At trial appellant moved to suppress evidence of the food seized as a result of the search of the trunk of the automobile and to suppress the testimony of the driver whose identity was obtained through exploitation of the stop and the search. The military judge denied both motions.

### II

Underlying the questions posed above is the issue first argued below and first presented in the appellate briefs, viz., whether appellant as a passenger has standing to object to the stop of the automobile and the search of the trunk. Because appellate counsel have focused their briefs on standing as to the search, we will consider that aspect first.

The appellant bases his argument that he can object to the illegality of the search and the admissibility of evidence discovered thereby on paragraph 152, Manual for Courts-Martial, United States, 1969 (Revised edition), and on the case of *United States v. Harris,* 5 M.J. 44 (CMA 1978). The *Manual* provides:

Evidence is inadmissible against the accused:

.    .    .    .    .

for a private midnight snack.

---

1. Members of the group had entered the messhall earlier and taken ham, cheese, and bread

If it was obtained without the freely given consent of the accused as a result of an *unlawful search* of another's premises on which the accused was legitimately present, and the search in question was conducted, instigated, or participated in by an official or agent of the United States, or any State thereof or political subdivision of either, who was acting in a Governmental capacity; . . .

This provision was based on the decision of the Supreme Court in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), a case concerning the question of standing. *Analysis of Contents, Manual for Courts-Martial, United States, 1969, Revised Edition*, DA Pamphlet 27–2, at 27–39.

The Court of Military Appeals considered the question of standing in *Harris* wherein it stated:

Standing may be shown from legitimate presence at the scene of the search; ownership of, or possessory interest in, the place or thing searched; or being charged with an offense having possession of the seized item at the time of the search as an essential element. (Citations omitted.)

Where possession of the challenged items is an essential element of the offense, standing is "automatic." Otherwise, "actual standing" may be shown by presence at the scene of the search or by claiming "a proprietary interest in the premises searched or a possessory interest in the articles seized." (Citation omitted.) 5 M.J. at 46–47.

The appellant argues that as he was legitimately in the car and gave no consent to the search of the trunk, he can raise the issue of the legality of the search. If the search was illegal, both Paragraph 152 and *Harris*, he contends, preclude admissibility of the items seized. We do not agree.

In our opinion neither *Harris* nor paragraph 152 of the *Manual* provide appellant with a basis for asserting a violation of his Fourth Amendment rights. *Harris* is dis-

tinguishable and thus not controlling here for two reasons. First, *Harris* has been overcome by a later Supreme Court decision, *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). In *Rakas* the Court reexamined the concept of standing and its relationship to Fourth Amendment rights. The Court stated:

[W]e think that definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing. (Citations omitted.)

Analyzed in these terms, the question is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect.

The Court went on to hold that a passenger who "asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized," had no legitimate expectation of privacy in the automobile or trunk and thus no personal Fourth Amendment rights violated by the search.

The second distinguishing feature which makes the result in *Harris* inapplicable here is the factual distinction between *Harris* on the one hand and this case and *Rakas* on the other. *Harris* involved a defendant charged with a possessory offense. This case and *Rakas* were not concerned with a possessory charge or with an offense in which possession was an essential element. Thus this appellant, like *Rakas*, but contrary to *Harris*, would have no "automatic standing" to complain, under the rule announced in *Jones*.[2]

The provision of paragraph 152, MCM, 1969 (Rev.), upon which appellant is relying also furnishes him no basis for relief. That provision does not set out a rule of evidence

---

2. *Rakas* specifically left open the question of the continued vitality of the automatic standing rule.

for the military which is more strict than the constitution requires. The *Manual* proviso does nothing more than adopt the elastic terminology of *Jones* regarding the interest of an accused in a search of another's premises. When the Supreme Court in *Rakas*, explained that the phrase "legitimately on the premises," as used in *Jones*, meant more than mere presence with permission, then that interpretation must be applied to paragraph 152 of the *Manual* where the same terminology was adopted. The phrase means that the person has a sufficient interest in the place searched to raise a legitimate expectation of privacy therein.

■ We therefore conclude that *Rakas* and not *Harris* or the *Manual* provision controls here. The facts in this case are similar to *Rakas*. The appellant expressed no ownership interest in the automobile or in the items in the trunk and made no outward protest or even weak intimation of an objection that his personal Fourth Amendment rights were being violated by the search of the trunk. He had no legitimate expectation of privacy in the trunk and his Fourth Amendment rights were not violated.

### III

The fact that appellant had no Fourth Amendment rights violated by the search of the trunk does not end the matter for there is yet another facet of the case that may affect the admissibility of the evidence derived from the search of the trunk. It concerns the legality of the initial stop and detention of the car and occupants by the Waynesville and St. Robert police. If the stop and the detention were illegal, and thus violative of the appellant's Fourth Amendment rights, then evidence that

flowed directly and immediately therefrom may be tainted and thus excludable. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Nardone v. United States*, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed.2d 307 (1939); *Silverthorne v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed.2d 319 (1920). *Cf., United States v. Peurifoy*, 22 U.S.C.M.A. 549, 48 C.M.R. 34 (1973).

■ A policeman may stop an automobile being driven on the public highway where there is probable cause to believe, or at least articulable and reasonable suspicion, that the car is being operated in violation of the applicable motor vehicle laws, or that either the car or an occupant is subject to seizure and detention for violation of any other applicable law. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660, (1979).[3] The reasonable and articulable suspicion that is necessary for the stop of a vehicle is measured by the objective standard announced in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), for the stop of a person.

In the instant case, the Waynesville policeman did not stop the car because it was violating any motor vehicle law or was being driven in any reasonably suspicious manner. On the contrary, the parties stipulated that the stop was solely for littering, based upon the information received via radio from the St. Robert police.[4]

Left for consideration is whether the report of littering and the call to stop the car and occupants for that offense made "either the vehicle or an occupant . . . otherwise subject to seizure for violation of law, . . ." within the meaning of *Delaware v. Prouse, supra*. Looking to the Missouri

---

**3.** The case of *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), concerned the random stop of an automobile, not a roadblock type stop of all traffic which the Supreme Court indicated might be permitted.

**4.** The trial counsel argued that the stop was justified as a safety precaution because the policeman had seen what he suspected was gasoline leaking from the gas tank or the trunk. If this contention were correct it would put the

case in a new perspective. However, the Government stipulated themselves out of court on this point. Also it is without foundation factually. The Waynesville policeman demonstrated no concern for safety in making the stop; he merely asked for identification and detained the car and occupants for the St. Roberts police. He made no effort to check for gasoline or to move the occupants because of danger.

law we find that the Waynesville policeman had no authority, absent a warrant, to stop the car within his jurisdiction for violation in St. Robert of a St. Robert city ordinance, a misdemeanor. Similarly, the St. Robert police had no authority to arrest or search in Waynesville, or for that matter even in St. Robert where, as here, they had no warrant and the offense was a misdemeanor not committed in their presence. *See* Missouri Revised Statutes Annotated §§ 72.030, 72.040, 85.561, 85.610, 85.620; Opinion of Attorney General of Missouri No. 32, Garnholz, dated December 27, 1955.

▪ We conclude that the initial stop of the automobile and the detention of the occupants by the Waynesville police was an illegal seizure of appellant's person within the meaning of the Fourth Amendment. *Delaware v. Prouse, supra.* Also the continuation of detention by the St. Robert police was equally violative of appellant's Fourth Amendment rights. The evidence seized from the trunk flowed directly and immediately from the illegal stop. There were only a few minutes between the stop and the search; the occupants of the car were detained on the spot during the interim; and the police involved in the stop and the search were from adjacent, cooperating jurisdictions. We hold that the evidence seized here was a result of the exploitation of the illegal stop and detention of appellant and it should have been suppressed on that basis. *Delaware v. Prouse, supra; Nardone v. United States, supra; Silverthorne Lumber Co. v. United States, supra; United States v. Peurifoy, supra.*

### IV

We turn now to the question of the suppression of the testimony of a live witness (the owner/driver of the car) where there is a causal connection between the witness and the original illegality, the stop and seizure of the person. In the case of *Wong Sun v. United States, supra,* the Supreme Court stated that: "verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion." 371 U.S. at 485, 83 S.Ct. at 416.

Later in *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978), the Court refined the broad language of *Wong Sun* and, in declining to apply the exclusionary rule to the testimony of a witness stated: "the exclusionary rule should be invoked with much greater reluctance where the claim is based on a causal relationship between a constitutional violation and the discovery of a live witness than when a similar claim is advanced to support suppression of an inanimate object." 435 U.S. at 280, 98 S.Ct. at 1062.

▪ Although the fruit of the poisonous tree doctrine still applies to verbal evidence, when that evidence is in the form of live testimony at trial, there are other factors which must be considered in determining whether to invoke the exclusionary rule. Among those factors are the status of the witness, *e. g.,* accomplice or innocent bystander, the extent of free will exercised by the witness in testifying, the relationship of the testimony to the original illegality, and the cost to the criminal justice system of excluding live witness testimony. *United States v. Ceccolini, supra.*

▪ In viewing the facts of this case in light of the considerations discussed in *Ceccolini,* we find differences of such significance as to call for suppression of the testimony. Here the witness was a potential accused whereas in *Ceccolini* the witness was an innocent employee of the defendant; here the witness' identity was divulged solely as a result of the illegal stop whereas in *Ceccolini* the witness was known to have probable relevant information as a result of another investigation; here the witness volunteered to testify in order to avoid prosecution as a co-accused whereas in *Ceccolini* the witness volunteered to testify as a good citizen to assist police authorities; and finally here the flagrant police misconduct is the type that would respond to and could be deterred by invoking the exclusionary rule

whereas in *Ceccolini* the impulsive, almost inadvertent illegal search was of a type not likely to be affected by prior consideration of the consequences. Although there was a considerable period of time between the original illegality and the witness' volunteering to testify, and between the latter event and the trial itself, the threat of prosecution arising from the earlier illegal stop still permeated the proceeding and the action of the witness. The taint was not dissipated and the testimony should have been suppressed.

The Government offered nothing to show that the testimony of the witness was obtained other than as a result of the illegal stop and seizure and nothing in the record even hints at an independent source. *United States v. Peurifoy, supra.* Accordingly, we find that the testimony of the witness like the evidence from the search of the trunk of the car was tainted from the illegal stop and detention of the car and occupants. It too should have been suppressed. Without the real and testimonial evidence, there appears to be no admissible evidence to establish appellant's guilt and a rehearing would be meaningless.

The findings of guilty and the sentence are set aside and the charges are dismissed.

Judge GARN and Judge LEWIS concur.