[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 30, 2010
JOHN LEY
CLERK

_____

No. 08-14346

_____

D. C. Docket No. 07-20793-CV-ASG

BARRY E. MUKAMAL,
as Liquidating Trustee and Director and
Officer Trustee of Far & Wide Corporation, et al.,

Plaintiff-Appellant,

versus

PHIL BAKES,
ANDREW C. MCKEY,
CRAIG TOLL,
GEORGE GREMSE,
LOAN CAPITAL FUNDING, LLC, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 30, 2010)

Before EDMONDSON and PRYOR, Circuit Judges, and CAMP,* District Judge.

CAMP, District Judge:

This appeal is from the district court's partial final judgment in a proceeding arising from the bankruptcy of Far & Wide enterprises ("Far & Wide"), a conglomerate of travel companies (collectively, the "Debtors"). The Debtors filed for bankruptcy in the United States Bankruptcy Court for the Southern District of Florida in Miami in September 2003. The bankruptcy court confirmed a liquidating plan of reorganization, which appointed Appellant, Barry Mukamal, ("Appellant" or "Trustee") as trustee of two trusts created to pursue claims on behalf of the Debtors and Debtors' creditors who had voted to accept the liquidation plan. Appellees, the defendants in the district court proceeding, are former directors and officers of Far & Wide (the "Individual Defendants"), as well as Far & Wide's majority shareholder, Wellspring Capital Management, LLC ("Wellspring").

The Trustee brought this action against Wellspring, the Individual Defendants, and several other entities alleging a variety of claims. The claims on this appeal are based on allegations that Wellspring and the Individual Defendants

_____

* Honorable Jack T. Camp, United States District Judge for the Northern District of Georgia, sitting by designation.

2

breached their fiduciary duties to the Far & Wide entities.  Wellspring and the Individual Defendants moved to dismiss these claims, and the district court found that the Trustee failed to state a claim for the alleged breaches of fiduciary duty and granted the motion to dismiss.  Upon a review of the record, the parties' briefs, and having the benefit of oral argument, we conclude the district court did not err and we affirm.

## I.  BACKGROUND

### A.  The Parties to this Dispute

The principal Debtor, Far & Wide, is a Delaware corporation formed in March 1999 to purchase travel companies.  The Individual Defendants were officers and/or served on the  board of directors of Far & Wide.  Even though Far & Wide was incorporated in Delaware, the majority of its operations were in Florida.

Wellspring is a Delaware corporation that manages private investment partnerships, such as Loan Capital Funding, LLC, which focus on investing in or acquiring companies.[1]  Wellspring and the Individual Defendants formed the

---

[1]Loan Capital Funding, LLC acted as a conduit between Wellspring and the Debtors. Although the Trustee also named Loan Capital Funding, LLC as a defendant in the underlying litigation, the Court refers to both Wellspring individually and Wellspring and Loan Capital Funding, LLC collectively as "Wellspring".

Debtor companies by consolidating various travel companies. Wellspring invested $45 million in the Debtors and acquired a majority of their stock. Wellspring also required the Debtors to appoint four of its partners to Far & Wide's six-member board of directors. With a majority of the board, Wellspring exercised a controlling interest in the Debtors.

From the time of the company's creation, Far & Wide planned to purchase and consolidate a number of smaller travel companies and to sell the resulting conglomerate to the highest bidder for a profit. Appellant alleges that Wellspring and the Individual Defendants violated their fiduciary duty of loyalty to Far & Wide by pursuing a plan that maximized their own self-interest but was harmful in the long-term to Far & Wide's creditors.

Far & Wide established lines of credit with a number of banks to raise capital. In 1999, the Debtors entered into a loan agreement with a group of banks to infuse $70 million into the Debtors. The Debtors provided their assets as collateral. A year later, the Debtors obtained an additional $20 million in unsecured financing.

## B. The Decline of Far & Wide

Time and circumstance, however, intervened in Far & Wide's plan. Fewer travelers took overseas trips after the September 11, 2001, terrorist attacks and the

subsequent outbreak of the SARS virus in Asia. Far & Wide faced a liquidity crises when the companies it owned and relied upon for operating funds faltered because of the struggling travel market. As a result, Far & Wide defaulted on the $70 million bank loan. After defaulting, Wellspring and the Individual Defendants represented to the banks that a single purchaser could still be found to purchase the consolidated travel enterprises. Based on these representations, the banks, which could have foreclosed, instead entered into a forbearance agreement. The banks, however, required the Debtors to hire consultants to aid in the daily operations of the Debtors' business.

In 2002, Far & Wide hired an outside company to solicit potential purchasers. Pursuant to its agreement with the banks, Far & Wide also hired KPMG and The Recovery Group ("TRG"), a firm specializing in turnaround and crisis management. KPMG was retained to review Far & Wide's records and to advise the directors and officers on how better to keep the company's books and records. Far & Wide's management neither implemented TRG's recommendations, nor implemented the bookkeeping and other advice it received from KPMG.

The Trustee alleges that Wellspring and the Individual Defendants, in their attempt to sell the travel enterprises for a sufficient price to obtain a return on their

5

investment, used false and misleading indicators of the Debtors' financial health. In addition, the Trustee alleges that Wellspring and Far & Wide chose not to file for bankruptcy or wind down the Debtors at that time because it would have caused them to lose their $45 million investment. The Trustee alleged Far & Wide was insolvent by April 2002.

In October 2002, the Debtors began a reorganization. Part of that reorganization included two $10 million loans. The Debtors sought and obtained consent to the loans and the restructuring from major creditors. One of the loans came from Wellspring, which charged an interest rate of 10% over prime and not less than 14.75%. Additionally, Wellspring insisted that its loan be repaid before all the claims of the Debtors' other creditors were paid. Wellspring and the Individual Defendants also converted a portion of Wellspring's equity position into a debt claim, which would have higher priority in the event of a bankruptcy. These loans allowed the Debtors to continue operating their businesses. Even though the conditions were arguably unfairly favorable to Wellspring, the Debtors do not allege that Wellspring received any benefit as a result of the loan agreement, which was never repaid. Nor was there any allegation that the loan could have been obtained on more favorable terms. Certain of the Trustee's claims in the district court, however, seek to subordinate the Wellspring loan to

other creditors' obligations and to recharacterize Wellspring's $12 million dollar debt claims as equity. The district court denied the motion to dismiss these claims, and the Trustee continues to pursue them in district court.

In July 2003, when the two $10 million loans came due, the Debtors could not repay the loans. Despite being insolvent, the Debtors continued operating the travel businesses, selling trips to customers, and purchasing services from vendors until September 23, 2003. Between July 2003 and September 23, 2003, the Debtors used customers' deposits to pay operating costs. Some of those customers lost their deposits and did not receive their travel arrangements because of the bankruptcy. These customers have priority bankruptcy claims of more than $5.6 million. After bankruptcy, assets for which the Debtors had paid $150 million were sold for a net of $14 million.

*C. The Trustee's Allegations in the Complaint and Amended Complaint*

The Trustee brought a number of claims against Wellspring and the Individual Defendants based on their having exercised control of the Far & Wide entities. The Trustee stated the following claims in the original Complaint:

1. The individual directors and officers of Far & Wide breached their fiduciary duties to the Debtors.

2. These individuals also breached their fiduciary duties to the Debtors' creditors.

3. These individuals aided and abetted each other in breaching their fiduciary duties to the Debtors and to Debtors' creditors.

4. Wellspring aided and abetted the Individual Defendants' breaches of their fiduciary duties to both the Debtors and the Debtors' creditors.

5. The claims of the Individual Defendants against the bankruptcy estate should be equitably subordinated in the bankruptcy to the claims of other creditors.

6. Wellspring misstated its purported debt claims in the bankruptcy and the debt claims should be recharacterized as equity.

7. Wellspring's claims against the bankruptcy estate should also be equitably subordinated to the claims of the other creditors.

8. Ernst & Young, LLP ("Ernst & Young"), who prepared audited financial statements for the Debtors, aided and abetted the breach of fiduciary duties by Wellspring and the Individual Defendants, breached their duty of care to the Debtors and the Debtors' creditors, and committed professional malpractice.

Subsequently, Ernst & Young and the Trustee agreed to submit the claims against Ernst & Young to arbitration, and the district court granted Ernst & Young's motion to compel arbitration. After Ernst & Young was removed, Wellspring and the Individual Defendants moved to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court denied Wellspring's and the Individual Defendants' motion to dismiss the claims for subordination and for recharacterization of debt (numbers five, six, and seven above), which continue before the district court. The district court dismissed the remaining claims (numbers one, two, three, and four above). With the Court's permission, Appellant filed an 82 page Amended Complaint on December 5, 2007, which included the following claims:

a.      Direct claims of the Debtors against Wellspring and the Individual Defendants for breach of fiduciary duties.

b.      Derivative claims of the Debtors' creditors alleging that Wellspring and the Individual Defendants breached fiduciary duties to the Debtors.

c.      Direct claims of the Debtors against Wellspring and the Individual Defendants for deceptive and unfair trade practices.

d.    Direct Claims by the Debtors against Wellspring and the Individual

Defendants for aiding and abetting each other's breach of their fiduciary

duties.

e.    Derivative Claims by the Debtors' creditors against Wellspring and the

Individual Defendants for aiding and abetting each other's breach of their

fiduciary duties.

Wellspring and the Individual Defendants moved to dismiss the Amended

Complaint.   The district court granted the motion, dismissed the Amended

Complaint, and entered partial final judgment pursuant to Rule 54(b) of the

Federal Rules of Civil Procedure so that the Trustee could appeal the dismissal of

the breach of fiduciary duty claims while the claims for subordination and for

recharacterization of debt proceeded in the district court.

## D.  The Issues on Appeal

Appellant appeals the district court's dismissal of the Debtors' direct claims

for breach of fiduciary duty by Appellees, the dismissal of the Debtors' creditors'

direct claims against Appellees for breach of fiduciary duty owed to them, and the

dismissal of the creditors' derivative claims against Appellees.  Appellant also

appeals the dismissal of the related aiding and abetting claims.  Finally, Appellant

appeals the district court's decision to apply Delaware rather than Florida law to

10

the fiduciary duty claims.  Appellant does not appeal the dismissal of the deceptive trade practices claims (claim c. above) or the dismissal of the claims against Ernst & Young (claim 8. above), which were compelled to arbitration.  The equitable subordination claims, the claim for recharacterization of Wellspring's (claims 5., 6., and 7. above) debt as equity, and a claim against Wellspring for disallowance of a claim in bankruptcy continue in the district court.

## II.  JURISDICTION

The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1334, which provides that district courts have original jurisdiction over civil proceedings related to bankruptcy cases brought under Title 11.  This Court has jurisdiction over an appeal from the final judgment of the district court pursuant to 12 U.S.C. § 1291. See also Thigpen v. Smith, 792 F.2d 1507, 1516 n.15 (11th Cir. 1986) (federal appellate courts have jurisdiction to review partial final judgments entered pursuant to Fed. R. Civ. P. 54(b)).

## III.  STANDARD OF REVIEW

This Court reviews the district court's dismissal for failure to state a claim *de novo*, accepting the allegations in the Complaint and Amended Complaint as true and construing those facts in the light most favorable to the Trustee.  Mills v. Foremost Ins. Co., 511 F.3d 1300, 1303 (11th Cir. 2008).  The Court reviews a

district court's order dismissing claims for lack of standing *de novo*. Miccosukee Tribe of Indians v. Florida State Athletic Com'n, 226 F.3d 1226, 1228 (11th Cir. 2000). Finally, the district court's decision to apply Delaware substantive law to the Trustee's claims is a legal question, which the Court also reviews *de novo*. Grupo Televisa, S.A. v. Telemundo Comm. Group, Inc., 485 F.3d 1233, 1239 (11th Cir. 2007).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007); Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555-56. Nor will mere labels and legal conclusions withstand a 12(b)(6) motion to dismiss. Id. This is a stricter standard than the Supreme Court described in Conley v. Gibson, 355 U.S. 41, 45-46, 79 S. Ct. 99, 102 (1957), which held that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 577. Under the standard articulated by the Supreme Court in Twombly, the

12

complaint cannot suggest the existence of a claim; the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

## IV. DISCUSSION

### A. Choice of Applicable Law

The Trustee brought this case in Florida, alleging that the Individual Defendants and Wellspring breached fiduciary duties owed to Far & Wide and its creditors. Although the acts forming the basis of the Trustee's claims occurred largely in Florida, both Far & Wide and Wellspring were incorporated in Delaware. The district court held that Delaware law, not Florida law, applied to the substantive claims asserted by the Trustee. On Appeal, Appellant contends that the district court erred by applying Delaware law.

The district court had jurisdiction of this matter pursuant to 28 U.S.C. § 1334. Federal courts sitting in diversity apply the forum state's choice of law rules. United States Fid. & Guar. Co. v. Liberty Surplus Ins. Corp., 550 F.3d 1031, 1033 (11th Cir. 2008); Grupo Televisa, 485 F.3d at 1240. Federal courts have adopted this principle in cases arising under 28 U.S.C. § 1334, when the underlying rights and obligations of the parties are defined by state law. See Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec.

Corp., No. 00-8688, 2002 WL 362794, *5 (S.D.N.Y. Mar. 6, 2002).  The Trustee

filed this action in Florida; therefore, Florida's choice of law rules apply.

The fiduciary duties owed to a corporation by its officers and directors

concern the internal affairs of a corporation. See Edgar v. Mite Corp., 457 U.S.

624, 645, 102 S. Ct. 2629, 2642 (1982) ("matters peculiar to the relationships

among or between the corporation and its current officers, directors, and

shareholders" are a corporation's internal affairs); see also Nagy v. Riblet Prods.

Corp., 79 F.3d 572, 576 (7th Cir. 1996) (applying the internal affairs doctrine to

claims of breach of fiduciary duty by a controlling shareholder).  The Florida

Business Corporation Act provides that the internal affairs of a corporation are

governed by the laws of the state of incorporation.  Fla. Stat. § 607.1505(3);

Chatlos Found., Inc. v. D'Arata, 882 So. 2d 1021, 1023 (Fla. 5th DCA 2004)

(applying the internal affairs doctrine as codified by the Florida Not for Profit

Corporation Act, which is identical to Fla. Stat. § 607.1505(3)).

> [The Florida Business Corporation Act] does not authorize this state
> to regulate the organization or internal affairs of a foreign corporation
> authorized to transact business in this state.

Fla. Stat. § 607.1505(3).  The Restatement (Second) of Conflict of Laws also

provides that the internal affairs of corporations are governed by the laws of the

14

state of incorporation. See Restatement (Second) of Conflict of Laws §§ 302-9 (1971).

As claims concerning the internal affairs of Far & Wide, the fiduciary duty claims asserted by the Trustee are governed by the law of Delaware, the state of incorporation. Fla. Stat. § 607.1505(3); Chatlos, 882 So. 2d at 1023. An exception to the internal affairs doctrine exists in the "unusual case" where the forum state has a more significant relationship to the parties and the occurrence. Restatement (Second) of Conflict of Laws §§ 302, 306, 309. The Trustee contends that Florida has a more significant relationship to this dispute, and, thus, the internal affairs doctrine should not apply to this case. As the district court noted, however, the Trustee has not shown that Florida has the type of overriding interest in applying its laws to this dispute so as to rebut the presumption that the laws of the state of incorporation apply to claims for breach of fiduciary duty by officers, directors, and a majority shareholder. See Restatement (Second) of Conflict of Laws § 6 (1971) (setting forth factors to consider for determining whether a forum other than the state of incorporation has a more significant relationship to the parties or occurrence). Accordingly, the district court was correct to apply Delaware law to the substantive claims in this dispute.

*B. Appellant's Attempt to Bring Creditors' Claims Directly Against Wellspring and the Individual Defendants*

In the original Complaint, the Trustee sought to bring claims against the Individual Defendants and Wellspring for breaching a fiduciary duty owed directly to the creditors after the Debtors became insolvent. See supra Part I.C.claims 2-4. In the Amended Complaint, the Trustee attempted to bring derivative claims on behalf of the creditors based on the Individual Defendants' and Wellspring's breaches of fiduciary duties owed to the Debtors. See supra Part I.C. claims b,d. The district court dismissed the direct creditor claims in the original Complaint, holding Delaware law did not recognize direct creditor claims under North American Catholic Educational Programming Foundation, Inc. v. Gheewalla, et al., 930 A.2d 92, 101 (Del. 2007). The district court alternatively held that the Trustee did not have standing to bring direct creditors' claims on behalf of less than all creditors under Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 92 S. Ct. 1678 (1972), and E.F. Hutton & Co. v. Hadley, 901 F.2d 979, 986 (11th Cir. 1990). The district court dismissed the derivative claims as duplicative and a waste of judicial resources. We find that the district court was correct for the following reasons.

16

*1. Delaware Law Does Not Recognize Direct Claims for Breach of Fiduciary Duty by the Debtors' Creditors.*

The original Complaint asserted three direct claims on behalf of the Debtors' creditors against Wellspring and the Individual Defendants for breach of fiduciary duty. The Trustee argued that both the Individual Defendants and Wellspring owed fiduciary duties directly to the Debtors' creditors once Far & Wide became insolvent. The district court dismissed the creditors' direct claims for breach of fiduciary duty under Delaware law. Appellant appeals the dismissal as error.

Delaware law recognizes that officers and directors are given wide latitude to run a corporation as they see fit for the benefit of shareholders. Michelson v. Duncan, 407 A.2d 211, 217 (Del. 1979). Appellant argues, therefore, that the directors' and officers' duties change once a corporation becomes insolvent because Delaware courts have long recognized that, when a corporation becomes insolvent, its property must be administered as a trust fund for the benefit of creditors. See Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp., 1991 WL 277613, at *1155 n.55 (Del. Ch. 1991) (describing the "curious"

incentives and divergence of interests creditors and directors face during insolvency); <u>Bovay v. H.M. Byllesby & Co.</u> 38 A.2d 808, 813 (Del.1944).

Appellant contends that, upon insolvency, the officers and directors owe a fiduciary duty directly to creditors, which requires them to maximize the company's value for the creditors, as the corporation's residual value holders. <u>See, e.g.</u>, <u>Geyer v. Ingersoll Publications Co.</u>, 621 A.2d 784, 787-88 (Del. Ch. 1992) (suggesting that a fiduciary duty to creditors arises at insolvency); <u>see generally</u> Richard M. Cieri & Michael J. Riela, <u>Protecting Directors and Officers of Corporations That Are Insolvent: Important Considerations, Practical Solutions</u>, 2 DePaul Bus. & Comm. L.J. 295, 301-02 (2004) (drawing the inference from prior Delaware authority that insolvency alters the nature of fiduciaries' duties); Laura Lin, <u>Shift of Fiduciary Duty Upon Corporate Insolvency: Proper Scope of Directors' Duty to Creditors</u>, 46 Vand. L. Rev. 1485, 1512 (1993) (same).

The Delaware Supreme Court provided clear guidance on this issue in <u>Gheewalla</u>, 930 A.2d at 101. In <u>Gheewalla</u>, a creditor of a Delaware corporation brought direct claims for breach of fiduciary duty against three of the corporation's directors. <u>Id.</u> at 94. The complaint alleged that three directors used

18

their control of the corporation to favor Goldman Sachs in violation of their fiduciary duties to the corporation. Id. The directors moved to dismiss the complaint for failure to state a claim. Id.

The Delaware Supreme Court held that creditors of an insolvent company do not have a direct claim against directors or managers for breach of fiduciary duty. Id. The Court explained that under Delaware law, "[d]irectors owe their fiduciary obligations to the corporation and its shareholders." Id. at 99. Because directors and officers do not owe a fiduciary duty to creditors, even after insolvency, the district court correctly dismissed the Debtors' creditors' direct claims for breach of fiduciary duty.

*C. The Creditors' Derivative Claims Are Mirror Images of the Debtors' Claims and Cannot be Brought in the Same Action.*

In the Amended Complaint, the Trustee also brought derivative claims by the Debtors' creditors. These claims attempt to assert derivatively the identical direct claims of the Debtors for breaches of fiduciary duty and depend on the same factual allegations. The district court referred to them as "mirror images" of the Debtors' claims and, in a well-reasoned analysis, dismissed these derivative claims as duplicative of the Debtors' direct claims.

19

A plaintiff may only recover from a defendant once for a single claim. See St. Luke's Cataract & Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1203 (11th Cir. 2009). If the Debtors succeed on the direct claims against the Individual Defendants then the creditors' derivative claims must fail because the Individual Defendants cannot be liable twice for the same claim. See Gen. Tel. Co. v. EEOC, 446 U.S. 318, 333, 100 S. Ct. 1698, 1708 (1980) ("courts can and should preclude double recovery by an individual"); White v. United States, 507 F.2d 1101, 1103 (5th Cir. 1975) ("no duplicating recovery of damages for the same injury may be had").[2] If, however, the Debtors' direct claims fail to state a claim then the creditors' derivative claims must also fail because the claims are based on the same factual allegations. Accordingly, this Court affirms the district court's dismissal of Counts III, IV, V, VI, and VII of the Amended Complaint.

*D. Appellant's Complaint and Amended Complaint Failed to State a Claim for Breach of Fiduciary Duty by Defendants.*

The Trustee does have standing to bring direct claims for breach of fiduciary duty on behalf of the Debtors. The Amended Complaint alleges that Wellspring and the Individual Defendants breached both the fiduciary duty of

---

[2]Fifth Circuit decisions rendered on or before September 30, 1981, are binding precedent on this court. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

20

loyalty and the fiduciary duty of care owed to the Debtors. The claims are based on allegations that the Individual Defendants and Wellspring operated Far & Wide with the goal of continuing its operations until it could be sold for a profit and refused to take other measures that may have better preserved its value for the creditors. The Trustee specifically focuses on the secured loan transaction between the Debtors and Wellspring in October 2002 as a primary example of this breach of duty.

The Trustee contends that Wellspring was preferred over other shareholders, and that the Individual Defendants, as interested inside directors, are not entitled to the protection of the business judgment rule. The Trustee contends that because the Individual Defendants are not protected by the business judgment rule, the burden shifts to the Individual Defendants and Wellspring to demonstrate that the loan was "entirely fair." For the following reasons, this Court finds that the district court did not err in dismissing the breach of fiduciary duty claims asserted against the Individual Defendants and Wellspring since the Complaint failed to state sufficient facts "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

### 1. The Duty of Loyalty

21

Under Delaware law, "[t]he essence of the duty of loyalty is that 'corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests.'" 1-4 Corporate Governance: Law and Practice § 4.03 (quoting Guth v. Loft, 5 A.2d 503, 510 (Del. 1939)). The duty of loyalty requires a fiduciary to act in the best interests of the corporation. Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361 (Del. 1993) ("the duty of loyalty mandates that the best interest of the corporation and its shareholders take precedence over any interest possessed by a . . . controlling shareholder and not shared by the stockholders generally.") A claim for breach of the duty of loyalty under Delaware law exists where (1) the company is harmed or (2) a fiduciary personally profits from a corporate opportunity. See Oberly v. Kirby, 592 A.2d 445, 463 (Del. 1991) (holding a breach of the fiduciary duty of loyalty can exist where either the beneficiary is harmed or the fiduciary uses knowledge gained from his position to advance his independent interests).

The Amended Complaint alleges that the Individual Defendants and Wellspring breached the duty of loyalty by favoring the interests of Wellspring over those of the Debtor. In short, the Amended Complaint alleges that the Individual Defendants managed Far & Wide for the benefit of a majority

shareholder and that Far & Wide obtained a loan from Wellspring in October 2002, which allowed the company to continue to run its troubled businesses rather than preserving its value for the creditors.

As a threshold matter, the conclusory allegations concerning breach of the duty of loyalty in both complaints are not supported by the necessary factual allegations "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Moreover, the Trustee alleges injury only to the Debtors' creditors. For example, the Amended Complaint alleges that the decision to accept the loan from Wellspring in 2002 and continue operating the business "resulted in the diminution in value of Far & Wide's assets to a point where Far & Wide did not have any ability to pay its liabilities to its creditors when bankruptcy protection was finally sought...."

In order to state a claim for breach of the duty of loyalty, the Trustee must allege facts that indicate either Far & Wide or its minority shareholders, not Far & Wide's creditors, were injured by the action of the Individual Defendants. See Cede & Co., 634 A.2d at 361 (stating that a breach of the duty of loyalty can exist where a fiduciary pursues his own interest over that of the shareholders). Neither the Complaint nor the Amended Complaint contain sufficient factual allegations to support such a claim. The Trustee does not allege facts demonstrating that the

majority shareholders were preferred in any way over the minority shareholders. No allegations indicate that the loan could have been obtained on more favorable terms, that the Individual Defendants personally benefitted, or that Wellspring benefitted at all since the loan was never repaid.

The only injury alleged in the Amended Complaint was to the Debtors' creditors as a result of Far & Wide staying in business longer and deepening its insolvency, when it would have been in the best interest of the creditors for Far & Wide to cease business and liquidate. Delaware law, however, does not recognize a cause of action for "deepening insolvency." <u>Trenwick Am. Litig. Trust v. Ernst & Young, LLP</u>, 906 A.2d 168, 174, 204 (Del. Ch. 2006).

> Even when a firm is insolvent, its directors may, in the appropriate exercise of their business judgment, take action that might, if it does not pan out, result in the firm being painted in a deeper hue of red. The fact that the residual claimants of the firm at that time are creditors does not mean that the directors cannot choose to continue the firm's operations in the hope that they can expand the inadequate pie such that the firm's creditors get a greater recovery.

<u>Id.</u> at 174.

The Trustee alleges that the actions taken by the board of directors were done so that the company could continue operating in an attempt to facilitate a sale of the corporation to a third party. The sale, however, would have

maximized the value to all shareholders.  Recent Delaware cases hold that officers and directors do not breach the duty of loyalty by exercising their business judgment and continuing to operate an insolvent corporation rather than entering bankruptcy and preserving assets to pay creditors.  Trenwick, 906 A.2d at 174; Gheewalla, 930 A.2d at 99 (explaining that the general rule is that directors of a corporation do not owe creditors duties beyond the relevant contractual terms).

In fact, Gheewalla presents an analogous factual situation.  In Gheewalla, a creditor of Clearwire Holdings, Inc. ("Clearwire") sued several directors of Clearwire for breach of fiduciary duty.  Gheewalla, 930 A.2d at 94.  The creditors alleged that the directors breached their fiduciary duties once Clearwire became insolvent and effectively went out of business because the directors allowed the corporation to continue holding certain licenses.  Id. at 97-99.  Holding onto these licenses required large expenditures of cash each month, which otherwise would have been available for creditors had the corporation liquidated.  Id. at 97-99  The Delaware Supreme Court stated:

> It is well established that the directors owe their fiduciary obligations to the corporation and its shareholders. While shareholders rely on directors acting as fiduciaries to protect their interests, creditors are afforded protection through contractual agreements, fraud and fraudulent conveyance law, implied covenants of good faith and fair

25

dealing, bankruptcy law, general commercial law and other sources of creditor rights.

Id. at 99. All these remedies are available to the creditors in the present situation, and they continue to pursue some in the district court. If they were wronged, they have ample recourse, but the remedies do not include bringing a claim for breach of fiduciary duty where the only alleged injury is a deepening insolvency which harmed only creditors.

Since Delaware law does not recognize a duty to liquidate, and the Amended Complaint fails to allege sufficient facts to demonstrate the necessary elements of a claim for breach of the duty of loyalty to the Debtors, the district court did not err in dismissing Appellant's claim for breach of the fiduciary duty of loyalty.

## 2. *The Duty of Care*

"The fiduciary duty of care requires that directors of a Delaware corporation use that amount of care which ordinarily careful and prudent men would use in similar circumstances, and consider all material information reasonably available in making business decisions." In re Walt Disney Co., 907 A.2d 693, 749 (Del. Ch. 2005) (internal quotation and citation omitted). A deficiency in the process employed by the directors is only actionable as a breach

26

of the duty of care if the director's actions are "grossly negligent." Id. Gross negligence includes a director's failure to inform him or herself of available material facts when making a decision on behalf of the corporation. See In re Walt Disney Co., 906 A.2d 27, 64-64 (Del. Super. Ct. 2006); Smith v. Van Gorkhom, 488 A.2d 858, 874 (Del. 1985) (holding that board members who voted to approve a merger without reviewing any documentation regarding the adequacy of the proposed purchase price violated the duty of care), *overruled on other grounds by* Gantler v. Stephens, 965 A.2d 695, 713 n.45 (Del. 2009); Cede & Co. v. Technicolor, 634 A.2d 345, 367-68 (Del. 1993) (holding that the duty of care requires directors to act on an informed basis). Simply put, the standard is procedural, rather than substantive. In fact, Delaware law allows a company's board to even make an "irrational" decision, so long as the decision-making process employed by the board "was either rational or employed in a *good faith* effort to advance corporate interests." In re Caremark Int'l Derivative Litig., 698 A.2d 959, 967 (Del. Ch. 1996) (emphasis in original). Thus, directors who make a decision after employing a rational decision-making process and considering the pertinent information will not be liable for a breach of the fiduciary duty of care. In re Caremark, 698 A.3d at 967; Cede & Co., 634 A.2d at 367-68. Moreover,

even upon insolvency, the duty of care to the corporation remains the same. Gheewalla, 930 A.2d at 101.

The Amended Complaint fails to allege that the Individual Defendants did not employ a rational decision-making process or did not consider material information when making the decision to obtain additional loans and continue operating Far & Wide rather than proceed into bankruptcy. The Amended Complaint alleges only that the Individual Defendants "refused or failed to follow [the] advice" of the two independent consultants hired by Far & Wide's management. To state a claim for breach of the duty of care under Delaware law, a plaintiff must allege more than that the directors and officers of a corporation received information from outside consultants, but decided not follow this advice. Cede & Co., 634 A.2d at 367-68. Here, the Individual Defendants discharged their obligations under the duty of care by hiring consultants and by considering the consultants' advice, even if they did not follow the advice. Id. Accordingly, the district court properly dismissed Counts VI and XI of the Amended Complaint.

*E. The Amended Complaint Failed To State A Claim for Aiding and Abetting a Breach of Fiduciary Duty.*

In order to state a claim for aiding and abetting a breach of fiduciary duty under Delaware law, a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) that the fiduciary breached its duty, (3) that a defendant, who is not a fiduciary, knowingly participated in the breach, and (4) that damages to the plaintiff resulted from the concerted action of the fiduciary and the non-fiduciary. Gotham Partners L.P. v. Hallwood Realty Partners, et al., 817 A.2d 160, 172 (Del. 2002) (quoting Wallace v. Wood, 752 A.2d 1175, 1180 (Del. Ch. 1999)). The Amended Complaint alleges that the Individual Defendants and the Wellspring Defendants aided and abetted each others' breaches of fiduciary duties.

The underlying breaches of fiduciary duty that form the basis for the Debtors' claims for aiding and abetting are the same breaches of fiduciary duty that the Court finds fail as a matter of law. See supra Part IV.D.1-2. Because the underlying breach of fiduciary duty claims fail, the claims that Wellspring and the Individual Defendants aided and abetted those breaches must follow suit. See Gotham Partners, 817 A.2d at 172 (a claim for aiding and abetting a breach of fiduciary duty requires that the fiduciary breach its duty). The district court correctly dismissed the aiding and abetting claims, and this Court affirms the district court's dismissal of Counts IV, VII, IX, and XII.

## V. CONCLUSION

For the foregoing reasons, this Court **AFFIRMS** the judgment of the district court.