RENDELL, Circuit Judge,
concurring in part and dissenting in part.
Today, the Majority concludes that the able District Court judge abused his discretion by purportedly focusing on a consideration that we have never — indeed, by my research, no court has ever — stated it should not consider. How can that be? Furthermore, how can it be that the Majority mischaracterizes the late stage of the proceedings as being the focus of Judge Goldberg’s ruling when his reasoning actually focuses on the considerations that our case law dictates it should? Also how can it be that in analyzing judicial economy district courts are prohibited from considering the stage of the proceedings? I am perplexed. I am similarly per- *267 pléxed as to why the Majority is directing the District Court on remand to figure out whether joinder is practicable when the appellants have failed to make that case themselves. I therefore respectfully dissent from part III.A of the Majority’s opinion.

The District Court Correctly Applied Rule 23(a)(1)

The text of Rule 23(a)(1) provides the standard by which a district court determines if a putative class is numerous enough to be certified — the district court must determine if “joinder of all members is impracticable.” See also Newberg on Class Actions § 3:11 (5th ed.) (“[Rule 23(a)(1)’s] core requirement is that joinder be impracticable.”). Because the focus of Rule 23(a)(1) is on the practicability of joinder, it is well-established that “[t]he numerosity requirement requires examination of the specific facts of' each case and imposes no absolute limitations.” Gen. Tel. Co. of the Nw. v. EEOC, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980); see also Stewart v. Abraham, 275 F.3d 220, 226 (3d Cir. 2001) (“No minimum number of plaintiffs is required to maintain a suit as a class action....”); Newberg on Class Actions § 3:11 (“Numerousness — the presence of many class members — provides an obvious situation in which joinder may be impracticable, but it is not the only such situation; thus, Rule 23(a)(1)’s analysis may, in specific circumstances, focus on other factors as well.”). In examining the “specific facts of each case,” Gen. Tel. Co., 446 U.S. at 330, 100 S.Ct. 1698, we have instructed courts to bear in mind the underpinnings of the numerosity requirement. The first of these is “judicial economy by sparing courts the burden of having to decide numerous, sufficiently similar individual actions seriatim.” Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 594 (3d Cir. 2012). The second is “greater access to judicial relief, particularly for those persons with claims that would be uneconomical to litigate individually.” Id.[1]
Here, the District Court, after making a careful finding that the putative class consisted of 22 members, had to make a close call. Our cases have recognized that “[wjhile there are exceptions, numbers under twenty-one have generally been held to be too few.” Weiss v. York Hosp., 745 F.2d 786, 808 n.35 (3d Cir. 1984) (quoting 3B J. Moore, Moore’s Federal Practice ¶ 23.05[1], at 23-150 (2d ed. 1982)). This recognition, however, does not stem from any mechanical numerical requirement, but rather from an understanding that the considerations bearing on the practicability of joinder - are less likely to be met in classes with fewer than 21 members. See Newberg on Class Actions § 3:11 (“Nu-merousness — the' presence of many class members — provides an obvious situation in which joinder may be impracticable, but it is not the only such situation; thus, Rule 23(a)(1)’s analysis may, in specific circumstances, focus on other factors as well.”). Recognizing the closeness of the issue, the District Court did exactly as we have instructed it to do and looked to factors bearing on the objectives we cited in Marcus.[2] Indeed, the District Court examined *268 the very factors that the Majority embraces: judicial economy, the geographic dispersion of class members, the claimants’ ability and motivation to litigate as joined plaintiffs, and the financial resources of class members.
The District Court first considered whether judicial economy weighs in favor of finding joinder to be impracticable:
Considering the extensive history of this litigation and the exhaustive discovery that has been conducted, I conclude that judicial economy ⅛ best served by trying this case as a class action. Joinder of the absent class members would likely require additional rounds of discovery, which would only further delay a trial date. Further, if cases were brought within other jurisdictions, additional discovery is certainly a possibility, and separate trials could result in inconsistent verdicts.
JA-021. The reasons cited for finding judicial economy to favor certification of the class are entirely appropriate. “Judicial economy” means “[ejfficiency in the operation of the courts and the judicial system; esp., the efficient management of litigation so as to minimize duplication of effort and to avoid wasting the judiciary’s time and resources.” Judicial Economy, Black’s Law Dictionary (9th ed. 2009). The District Court here noted that the additional discovery and potential separate trials would further delay litigation that was already near its end stages, wasting the judiciary’s time and resources and requiring the duplication of efforts.
The District Court next considered the geographic dispersion of the class members, a factor widely recognized as vital in determining whether joinder is practicable. See, e.g., Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co., 772 F.3d 111, 120 (2d Cir. 2014) (listing “geographic dispersion” as a factor in the numerosity analysis); Newberg on Class Actions § 3:12 (same); 7A Charles. Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1762 (3d ed.) (same); 1 Moore’s Federal Practice § 23.22 (Matthew Bender 3d ed.) (same). The District Court found this factor to weigh heavily in favor of finding joinder impracticable, noting that the “class members are spread out over thirteen states and Puerto Rico.” JA-021. This, the District Court found, “would certainly present challenges to Plaintiffs in attempting to coordinate the litigation if all class mémbers were joined, particularly if additional discovery was required.” JA-021. Again, this finding is certainly reasonable, is supported by the record, and is in accordance with our instructions as to the relevant considerations in the numerosity calculation.
Against these concerns about judicial economy and, in particular, geographic dispersion, the District Court considered that many of the class members were sophisticated corporations with strong incentives to bring their own lawsuits. But this was not true for every class member, as six had claims below $1 million 'which might not be enough incentive “to engage in costly antitrust litigation on their own.” JA-022. This wholly appropriate consideration bears upon the objective to provide “greater access to judicial relief, particularly for those persons with claims that would be uneconomical to litigate individually.” Marcus, 687 F.3d at 594.
Ultimately, the District Court found the factors favoring the plaintiffs’ position (judicial economy and geographic dispersion) to be more compelling than the factor favoring the defendants’ position (the financial resources of the class members). In short, the District Court considered the policies we outlined in Marcus and made a thoughtful determination in a close case. Our abuse-of-discretion standard compels us to affirm that thoughtful determination. *269 Moreover, our. clearly erroneous standard compels us to not disturb the factual findings on which it was based.

The District Court Did Not Err in Considering the Stage of the Proceedings

The Majority, however, concludes that the District Court erred in its analysis of the “judicial economy” factor by taking into consideration the stage of the proceedings. As an initial note, I do not read the District Court’s analysis as turning solely upon a consideration of the late stage of the proceedings. Rather, the District Court examined many factors, most notably the additional discovery and judicial resources that would have to be expended were the cases to be litigated outside of the class action mechanism, regardless of how far advanced the class-wide proceedings were.
At any rate, it is appropriate — indeed, necessary — for a district court to consider the stage of the proceedings when examining whether judicial economy- favors class litigation or individual litigation. In considering judicial economy, a district judge must predict how the options before him will play out. This prediction becomes nonsensical, however, if- the district judge cannot take into consideration the amount of effort already expended. If you want to determine whether the path you are following is the most economical, is it not important to consider how far along that path you have already traveled?[3]
Unsurprisingly, then, courts widely — if not universally — recognize that it is appropriate for courts to consider the stage of the proceedings when weighing judicial economy. See, e.g., Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (“[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.” (emphasis added)); Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 420-21 (3d Cir. 2010) (“However, considerations of efficiency, fairness, and judicial economy weigh against a wholesale dismissal of the action at this stage.” (emphasis added)); Parker & Parsley Petroleum Co. v. Dresser Indus., 972 F.2d 580, 587 (5th Cir. 1992) (“At the stage of the proceedings when the motion was filed, judicial economy would have been better served by dismissal.” (emphasis added)); Park S. Hotel Corp. v. N.Y. Hotel Trades Council, 851 F.2d 578, 582 (2d Cir. 1988) (“[J]udicial economy would not be served by remanding the case at this late stage for arbitration, which:, almost certainly would be followed by further judicial proceedings.” (emphasis added)); United States v. Timmons, 672 F.2d 1373, 1380 (11th Cir. 1982) (“The district judge appropriately considered that joinder would not serve the interests of judicial economy in view of the late stage - of the proceed-ings_” (emphasis added)).
The Majority asserts, however, without citation to any authority, that a district court cannot consider “the fact that the complex nature of a case respited in the class certification decision being deferred for years,” see Majority Op. 255, or “the need to further delay trial were the class *270 not to be certified,” see Majority Op. 256, or even “the need to conduct further discovery if the class is not certified,” see Majority Op. 256. But these are precisely the type of practicalities — how long it would take, how complex it would be, how expensive it would be — that help determine the practicability of joinder. The Majority’s directive as to what a district court should consider turns the issue into an exercise in abstraction.[4] If a district judge cannot consider the practicalities of cost and time, then judicial economy will be poorly served indeed, and one of the core purposes of the class action mechanism*— to “save[ ] the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23” — will be undercut. See Califano v. Yamasaki, 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

The District Court Properly Considered the Ability of Plaintiffs to Litigate via Joinder

The Majority also characterizes the District Court’s ruling as focusing not on the ability of the plaintiffs to litigate via join-der but “focus[ing] instead on whether the individual plaintiffs could have brought their own, individual suits.” See Majority Op. 258. I disagree. To the contrary, the focus of the District Court’s opinion is on joinder throughout.[5] See, e.g., JA-020-22 (“Joinder of the absent class members would likely require additional rounds of discovery, which would only further delay a trial date.”); (“The considerable' geographic dispersion of the parties would certainly present challenges to plaintiffs in attempting to coordinate the litigation if all class members were joined, particularly if additional discovery was required.” (emphasis added)); (“Accordingly, Plaintiffs have demonstrated by a preponderance of the evidence that the parties are sufficiently numerous so as to make joinder impracticable.”).
The Majority makes its own contrary finding, surmising that the class members “appear likely to have the ability and incentive to bring suit as joined parties.” See *271 Majority Op. 258.[6] It directs the District Court on remand to consider whether it would be “uneconomical” for the six smaller class members to be joined. It thus instructs the District Court to make the case for joinder — a case the defendants failed to support themselves. The defendants offered little argument (let alone evidence) before the District Court that, notwithstanding the vast geographic dispersion of the plaintiffs, surely joinder would be practicable. Indeed,' at oral argument, counsel for Ranbaxy was asked whether joinder was impracticable and responded, “I don’t know.” Oral Arg. at 9:30-10:00.[7] The Majority is erecting roadblocks that do not exist.
Moreover, if one were- to speculate as to the likelihood of these plaintiffs, many competitors in a relatively small market, agreeing to come together — for -surely they couldn’t be forced to do so — the speculation would be to the contrary. Experience would dictate that many obvious practical reasons stand in the way of joinder: desire to have one’s self and own law firm control the litigation, choice of favorable forum, familiarity with the local jurisdiction’s laws and procedures, fear of being dragged into settlement, and concerns about the costs of litigating in a far-flung locale. Further, the larger plaintiffs could clearly afford to go their own way. Even in cases that come before the Judicial Panel on Multidistrict Litigation for joinder, where the issue involves only pre-trial proceedings,[8] plaintiffs invariably raise reasons for opposing joinder.[9] How can we possibly assume that the plaintiffs would have the “ability and incentive” to bring suit as joined parties? If the defendants had supported such a notion, that would be another matter. But the Majority asks the District Court to make its own record as to practicability. That is not our role, nor the role of the District Court.
[[Image here]]
Lastly, I am struck by the inescapable fact that this case has proceeded as a class action for years and nothing about it cries *272 out for anything but class treatment.[10] One has only to read the Majority’s, analysis of the real issues before the Court to conclude that it is unimaginable that this case should be torn apart at this late date and sent to the far corners of the United States to start over again as separate actions before several judges, each deciding anew the identical issues facing each plaintiffs claims. It should not be remanded at this late date.
This should not happen because Judge Goldberg has ably managed this case for a decade and properly considered every factor we have ever held to be relevant in determining' whether a class is so numerous that joinder would be impracticable. He hás not abused his discretion in so doing or made clearly erroneous findings of fact. I would therefore affirm the judgment of the District Court in its entirety. Accordingly, I respectfully dissent from Part III.A of the Majority’s opinion.

. As the Majority notes, the third underpinning, to “prevent!] putative class representatives and their counsel, when joinder can be easily accomplished, from unnecessarily depriving members of a small class of their right to a day in court to adjudicate their own claims,” id. is not relevant to 23(b)(3) actions. See Majority Op. 254 n.12.

. ' The Majority, asserts that the factors we should consider have not been previously set forth. But Marcus's recitation of the policies that animate numerosity provides a helpful standard from which the factors to consider are readily discernible. .

. The Majority’s references to "sunk costs” are inapt. See Majority Op. 255, 256, 256. Sunk costs are costs that have already incurred and cannot be recovered. See Verizon Commc’ns, Inc. v. FCC, 535 U.S. 467, 499, 122 S.Ct. 1646, 152 L.Ed.2d 701 (2002) (" ‘Sunk costs’. are unrecoverable past costs....” (emphasis added)). The District Court’s analysis did not consider sunk costs, but rather the relative costs, going forward, of joinder and class litigation. To determine the relative costs, going forward, of joinder and class litigation, one needs to know how much remains to be done under either alternative.

. The Majority instructs district courts to consider whether, in a hypothetical world, join-der would have been more efficient than the class mechanism. Cf. Majority Op. 257 ("In other words, without considering the late stage of the litigation, it should determine whether a class action would have been a substantially more efficient mechanism of litigating this suit than joinder of all parties.... At the same time, the District Court is free to rely on its superior understanding of how the case has proceeded to date for the purpose of determining whether the class mechanism would have actually been a substantially more efficient use of judicial resources than joinder of the parties at the onset of the litigation.”).

. The Majority, citing references to "individual suits” in the District Court's opinion, posits that "[e]ven a cursory look at the section on the ability and incentive of the class members to litigate reveals that the District Court was focused on the alternative of individual suits, not on joinder.” See Majority Op. 258 n.23. But the two concepts are not exclusive of each other, as the Majority itself recognizes in footnote 19, when it "read[s] Marcus's language about the ability 'to litigate individually,’ to refer to each plaintiff appearing on the record as a joined party, and not whether each individual plaintiff can litigate his or her own claim as the sole plaintiff.” See Majority Op. 257 n.19 (citation omitted). Litigation not pursued on a classwide basis is individual litigation, even if pursued via joinder, and the parties joined in a proceeding remain responsible for the individual litigation of their claims. See 7 Wright & Miller, supra, § 1652 ("Consequently, rights that are separate and distinct under the governing law are not transformed into joint rights when plaintiffs join under Rule 20 in a federal court action; each plaintiff's right of action remains distinct, as if it had been brought separately.”).

. This assertion stems from the defendants’ argument that “[e]ach of the 16 absent class .members has the ability and the financial .incentive to file its own claim.” See Appellants’ Br. 45. The Majority adopts this speculation as fact, but it is mere argument and speculation.

. An audio recording of the oral argument is available online at http://www2.ca3.uscourts. gov/oralargument/audio/15-3475InRe Modafinil.mp3

. This case would not be appropriate for an MDL as it is ready for trial and pre-trial proceedings are largely completed. •

. See, e.g., In re: Sci. Drilling Int'l, Inc., FLSA Litig., 24 F.Supp.3d 1364, 1364-65 (J.P.M.L. 2014) ("Plaintiffs oppose centralization as unnecessary, stating that they recognize the overlap in the actions and they already have agreed to coordinate pretrial proceedings to avoid duplicative discovery and inconsistent rulings."); In re: Standard & Poor’s Rating Agency Litig., 949 F.Supp.2d 1360, 1361 (J.P.M.L. 2013) ("Plaintiffs oppose centralization and argue, inter alia, that the Panel has never centralized litigation of this type, that transfer to a distant forum will inconvenience the states, and that transfer is unnecessary in light of the historic cooperation among state attorneys general.”); In re Le-Nature’s, Inc., Commercial Litig., 609 F.Supp.2d 1372, 1373-74 (J.P.M.L. 2009) (“Plaintiffs opposed to centralization argue, inter alia, that (1) the allegations pertaining to the bottling actions make up only a minimal part of the Trustee’s case; (2) all active parties to the bottling actions have admitted that Le-Nature’s perpetrated a systematic fraudulent scheme and, therefore, a large portion of the allegations set forth in the Trustee’s action is insignificant to the bottling actions; (3) the bottling actions are straightforward fraud cases that can readily be handled by their respective district courts; and (4) discovery can be coordinated in the bottling actions without centralization.”).

. The Majority contends that this is no "run-of-the-mill class action” given the top-heavy distribution of the claims among the class members. See Majority Op, 259-60. But whether the class looks like other classes is not controlling as to whether the requirements of Rule 23 have been met. Rule 23 was "designed to allow an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.” Califano, 442 U.S. at 700-01, 99 S.Ct. 2545 (emphasis added). The plaintiff's burden under Rule 23 is merely to demonstrate compliance by a preponderance of the evidence — not to establish "proof beyond any doubt.” Reyes v. Netdeposit, LLC, 802 F.3d 469, 485 (3d Cir. 2015). Here, given the evidence the plaintiffs have adduced regarding, inter alia, the impracticability of joinder and the predominance of common questions of law and fact, and given the paucity of contrary evidence adduced by the defendants, I reiterate that nothing about this case cries out for anything but class treatment.